**Rafael SANTIAGO, Plaintiff–Appellee,**

**v.**

**NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES and Dr. Melvin J. Steinhart, Defendants,**

**New York State Department Correctional Services, Defendant–Appellant.**

**No. 842, Docket 90–7020.**

United States Court of Appeals, Second Circuit.

Argued Feb. 13, 1991.

Decided Sept. 10, 1991.

**26**

Lawrence S. Kahn, Deputy Sol. Gen., New York City (Robert Abrams, Atty. Gen., State of N.Y., Howard L. Zwickel, Ellen J. Fried, Marilyn T. Trautfield, of counsel) for defendant-appellant.

Michael H. Sussman, Goshen, N.Y., for plaintiff-appellee.

Before PIERCE, WINTER and WALKER, Circuit Judges.

WALKER, Circuit Judge:

This case presents the novel issue of whether an action for damages based on a state's past deprivations of Fourteenth Amendment guarantees may be brought directly against a state under Section 1 of the Fourteenth Amendment, despite the traditional bar of Eleventh Amendment state immunity. Although a statutory civil rights damage action against a state alleging past Fourteenth Amendment deprivations is barred by the Eleventh Amendment, the question arises whether an action may nonetheless proceed directly under Section 1 of the Fourteenth Amendment since the Fourteenth Amendment was adopted subsequent to the Eleventh and imposes affirmative due process and equal protection obligations of the states through Section 1's self-executing substantive provisions.

The case comes to us as an appeal from an opinion and order of the United States District Court for the Southern District of New York (Robert J. Patterson, *Judge*) denying a motion by the New York State Department of Correctional Services (DOCS) to dismiss plaintiff-appellee Rafael Santiago's suit against it brought under Section 1 of the Fourteenth Amendment and 42 U.S.C. §§ 1981, 1983 and 1985(3) for emotional damages, litigation costs, and an injunction. 725 F.Supp. 780. Because we agree with DOCS that an action directly under Section 1 of the Fourteenth Amendment is barred by the Eleventh Amendment because it does not fit under either the "clear statement" or "waiver" excep-

tions to states' immunity from retroactive damage suits against them in federal court, we reverse Judge Patterson's denial of DOCS' motion to dismiss on jurisdictional grounds. We also hold that Judge Patterson should have dismissed Santiago's claim for prospective relief due to his failure to abide by the *Ex Parte Young* fiction in suing DOCS directly, instead of an officer of DOCS.

Reversed, and complaint dismissed.

## BACKGROUND

On June 15, 1987, Plaintiff–Appellee Rafael Santiago, a Hispanic corrections officer employed at the Otisville Correctional Facility in Orange County, New York, had an altercation with his supervisor. Following this incident, Santiago requested a leave of absence from the facility, which he received. During his leave, Santiago sought treatment from a privately retained psychologist. In late June, this psychologist sent a letter to the New York State Department of Correctional Services (DOCS) opining that Santiago would be able to resume work by July 15. However, DOCS refused to allow Santiago to return to work until he had been examined by a state Employee Health Service (EHS) physician, in order to determine whether he could return to work without jeopardizing the health or safety of other employees. The EHS physician, Dr. John Hargraves, examined Santiago on July 6, and then referred him to defendant Dr. Melvin Steinhart, a psychiatrist, for an additional examination. Dr. Steinhart is not employed by EHS, but performs outside examinations of state employees at the request of the state.

Based on his own examination of Santiago, and an additional examination by Dr. Horenstein, an EHS consulting clinical psychologist, Dr. Steinhart recommended to DOCS that Santiago's medical leave be continued. On August 13, 1987, DOCS notified Santiago that he would be placed on involuntary leave of absence. Santiago protested this action to DOCS, requesting a hearing pursuant to N.Y. Civil Service Law § 72(1) to contest the determination.

DOCS referred Santiago to Dr. Steinhart for an additional examination, which took place on September 15, 1987. Based on this examination, Dr. Steinhart prepared what Santiago terms a "materially misleading and false report" concluding that Santiago was mentally unfit to perform the duties of a corrections officer.

In October, 1987, Santiago's hearing pursuant to § 72(1) on his challenge to DOCS' involuntary leave decision was held. After several hearing days, the hearing officer found that Santiago was unable to perform the duties of a corrections officer due to a "medical disability." Pursuant to Civil Service Law § 72(3), Santiago appealed this determination to the Civil Service Commission, which after its hearing in April, 1988, reversed the hearing officer's decision, finding that as of July 15, 1987, Santiago had been fit for work as a corrections officer. The Commission ordered Santiago reinstated, and awarded him back pay and benefits for the time he had been on involuntary leave. The Commission did not, and was without authority to, award Santiago compensation for pain and suffering or for his litigation costs.

Santiago then commenced a suit in United States District Court for the Southern District of New York, claiming that DOCS and Dr. Steinhart had violated 42 U.S.C. §§ 1981, 1983, 1985(3), and Section 1 of the Fourteenth Amendment by conspiring to prepare a materially misleading report relied upon by DOCS in finding plaintiff unfit for work. This action, Santiago claimed, was a part of DOCS' systemic and intentional practice of disciplining black and Hispanic corrections officers in a discriminatory fashion. Santiago sought damages for emotional distress and reimbursement of his litigation costs from DOCS, and punitive damages against Steinhart, as well as an injunction that would prohibit DOCS from taking any "retaliatory action" against him for bringing the lawsuit.

DOCS moved to dismiss the suit under Fed.R.Civ.P. 12(b)(1) and (6), arguing that the Eleventh Amendment to the United States Constitution barred the maintenance of this action under both the civil rights statutes and the Fourteenth Amendment for damages against a state or a state agency in federal court. In responding to DOCS' motion, Santiago conceded that his §§ 1981 and 1983 claims against DOCS were barred by the Supreme Court's decisions in *Patterson v. McClean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) and *Will v. Michigan Dep't of State Police* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), respectively; however, Santiago maintained that he still had a cause of action against DOCS directly under Section 1 of the Fourteenth Amendment.

In a November 29, 1989 opinion, Judge Patterson denied DOCS' motion to dismiss, agreeing with Santiago that the Eleventh Amendment did not bar his suit under Section 1 of the Fourteenth Amendment. The Court dismissed the § 1985(3) claim because Santiago failed to satisfy that section's threshold requirement of a conspiracy between "two or more persons", it held that a suit under Section 1 of the Fourteenth Amendment fell under both the "clear statement" and "waiver" exceptions to Eleventh Amendment immunity. Congress had expressed its clear intention to hold states responsible for due process and equal protection violations without due process of law by passing the self-executing substantive provisions of the Fourteenth Amendment embodied in Section 1, Judge Patterson reasoned, and the states had waived their immunity from citizens' suits protesting such deprivations by ratifying the Amendment. The court then addressed the "separate" question of whether Section 1 permits a remedy for violations of its provisions encompassing a retroactive damage award. Holding that the need for a damage recovery beyond backpay or injunctive relief permits courts to fashion a remedy based on *Bivens v. Six Unknown Federal Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for a constitutional violation not encompassed by other statutes, the court allowed Santiago's claim for emotional damages against DOCS to proceed.

DOCS appeals from Judge Patterson's decision.

## DISCUSSION

### A. *Permissibility of a Suit for Retroactive Damages against States under Section 1 of the Fourteenth Amendment*

■ The question squarely before us in this appeal is whether a person may bring a suit for retroactive damages against a state or a state agency[1] in federal court directly under Section 1 of the Fourteenth Amendment, despite the principle of state sovereign immunity embodied in the Eleventh Amendment. In answering it, we find Santiago's argument that "the Fourteenth Amendment, *ex proprio vigore* works a *pro tanto* repeal of the Eleventh Amendment" *Milliken v. Bradley*, 433 U.S. 267, 290–91, n. 23, 97 S.Ct. 2749, 2762–63, n. 23, 53 L.Ed.2d 745 (1977) (failing to reach the issue), to be too facile. An examination of Supreme Court Eleventh Amendment jurisprudence reveals a complex and flexible relationship between that Amendment and the Fourteenth, and leaves no room for the notion that the later amendment simply erased the earlier. Without denying the self-executing nature of the substantive provisions of the Fourteenth Amendment that impose substantial duties on the states, the Court has nevertheless recognized that states have enjoyed a historical immunity, embodied in the Eleventh Amendment, from suit in federal court "seeking to impose a liability which must be paid from public funds in the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974). Therefore the Court has to this date only sanctioned actions for damages arising from a state's violation of the Fourteenth Amendment when Congress has acted under § 5 of the Amendment to "en-force" its sections with "appropriate legislation" which allows for such a federal remedy. In the absence of Congressional action under § 5, the Court has not recognized Fourteenth Amendment abrogation of the Eleventh Amendment, such as would permit an action for damages against a state in federal court. Therefore, in following and appreciating the delicate balance struck between the Amendments throughout Supreme Court jurisprudence on this issue, we conclude that we cannot permit Santiago's action to proceed in federal court.

Upon first reading, the Eleventh Amendment does not recognize any compromise in the jurisdictional barrier it erects protecting states from suit in federal court. It merely states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court in *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), added to this unrestricted immunity by holding that suits by a state's own citizens in federal court are likewise barred by the Amendment.

However, in the landmark case of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Court first recognized the tension existing between the grant of such absolute immunity to states in federal court and the charge put to them by the Fourteenth Amendment of the federal Constitution to afford equal protection and due process to their citizens. There the Court held that the Eleventh Amendment did not bar an action in federal court seeking to enjoin a state official from enforcing a

---

1. Agencies of the state, such as DOCS, are entitled to assert the state's Eleventh Amendment immunity where, for practical purposes, the agency is the alter ego of the state and the state is the real party in interest. *See Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) ("in the absence of consent [claims against] the State or one of its agencies or departments ... [are] proscribed by the Eleventh Amendment"); *see also Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974) ("It is also well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment.... 'When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.'") (quoting *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945)).

statute claimed to violate the Fourteenth Amendment. *Ex Parte Young* changed the jurisdictional boundaries of the Eleventh Amendment, effectively reading out the words "or equity" in the Amendment in cases of constitutional violations by allowing federal courts to order prospective equitable relief when state officials failed to conform their conduct to the strictures of the substantive provisions of the Fourteenth Amendment. *See Edelman v. Jordan*, 415 U.S. at 664, 94 S.Ct. at 1356.

Sixty-six years later, in *Edelman v. Jordan*, the Court reaffirmed the jurisdictional divide laid out in *Ex Parte Young*. Holding that a federal suit requiring "payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation, ... [i.e.] a retroactive award of monetary relief" was barred by the Eleventh Amendment, the Court reiterated that suits for prospective equitable relief and retroactive damages are treated differently under the Amendment, stating that prospective relief is permissible, but retroactive damages are not. *Edelman*, 415 U.S. at 668, 94 S.Ct. at 1358. The Court, in essence, redefined a state's Eleventh Amendment sovereign immunity as freedom from an "action ... for the recovery of money from the state [when] the state, is the real, substantial party in interest"; *Edelman*, 415 U.S. at 663, 94 S.Ct. at 1356 (quoting *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945)), not freedom from "compliance in the future with a [federal court's] substantive federal-question determination." *Edelman*, 415 U.S. at 668, 94 S.Ct. at 1358.

In *Milliken v. Bradley*, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977), the Court expanded somewhat the notion of what "prospective" relief involves, by holding that ordering a state to put into effect, at public expense, a program which would remedy the effects of a school district's past discrimination did not violate the Eleventh Amendment. The Court held that the plan, although "compensatory" in nature, "operate[d] *prospectively* to bring about the delayed benefits of unitary school system," *Id.* at 290, 97 S.Ct. at 2762, and did not award damages for past operations of the segregated school system. The Court's insistence on fitting such relief under a "prospective" label solidified the distinction it has drawn between prospective and retroactive relief in setting the boundaries of the Eleventh Amendment's bar on suits against a state in federal court. The distinction accommodates an individual's right to obtain relief in federal court from state officials' unconstitutional actions with the states' right not to have their public coffers depleted with large retroactive damage awards. *See Townsend v. Edelman*, 518 F.2d 116, 121 (7th Cir.1975).

Santiago's suit for damages due to his emotional distress because of DOCS' alleged violation of the Fourteenth Amendment is a suit for retroactive damages, and as such, runs into the Eleventh Amendment jurisdictional bar as it has been developed from *Hans* through *Milliken v. Bradley*. Santiago argues, however, that his action under § 1 of the Fourteenth Amendment fits into both of the Supreme Court's exceptions to this jurisdictional bar.

At the same time that the Court was developing a definition of what the Eleventh Amendment meant—determining, in the face of the federal mandate of the Fourteenth Amendment, the extent to which states could be sued in federal court for violations of that mandate, and crafting a compromise notion that the Eleventh Amendment bar reached retroactive damage actions, but no further—the Court was developing a jurisprudence of exceptions to the workings of the Eleventh Amendment altogether. If a suit fell under one of these exceptions, a state could be sued for equitable relief, or damages, or both, because the Eleventh Amendment's bar on damages would not apply. The first of these exceptions occurs when Congress passes a statute abrogating the states' right to immunity in the particular context of that statute. Such Congressional abrogation occurs, however, "only [when Congress] mak[es] its intention unmistakably clear in the language of the statute." *Dellmuth v. Muth*, 491 U.S. 223, 228, 109

S.Ct. 2397, 2400, 105 L.Ed.2d 181 (1989) (quoting *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985)). The second exception occurs when the states themselves decide to waive their immunity to suit in federal court. Waiver will only be found, however, "where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Edelman,* 415 U.S. at 673, 94 S.Ct. at 1361, (quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)). States cannot "constructively consen[t]" to waiver of their Eleventh Amendment protection from suit. *Edelman,* 415 U.S. at 673, 94 S.Ct. at 1360.

■ Santiago argues, and Judge Patterson found, that his Section 1 action fits the "clear statement" exception to immunity, because Section 1 of the Fourteenth Amendment itself abrogated states immunity from suit in federal court. Congress meant the substantive provisions of the Fourteenth Amendment to apply to the states, Santiago argues, and therefore intended to create a cause of action against the states for their violation. We believe, however, that Section 1 by itself fails to meet the standards of the "clear statement" abrogation exception.

In relevant part, the Fourteenth Amendment provides:

Section 1. ... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens or the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

. . . .

Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

Although Section 1 "by express terms" applies to the states, and by it Congress clearly impressed upon the states "duties with respect to their treatment of private

individuals," *Fitzpatrick v. Bitzer,* 427 U.S. 445, 453, 96 S.Ct. 2666, 2670, 49 L.Ed.2d 614 (1976), the language of the section nowhere expresses an intent to abrogate a state's immunity from suit for damages resulting from a violation of these duties. Section 1, on its own, has been found to support a cause of action for prospective relief against a state official as demonstrated by *Ex Parte Young* and *Milliken v. Bradley,* but no Supreme Court decision has held that Section 1 in itself will support a retroactive damage action against a state.

Instead, in *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976), the Court held that Congress could pass a statute pursuant to § 5 of the Amendment which would allow individuals to sue states for retroactive damages from job discrimination, a clear abrogation of the states' Eleventh Amendment immunity. The *Fitzpatrick* Court, in holding that "Congress may, in determining what is 'appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts" implied that Section 1 alone, without any accompanying § 5 action, was insufficient to permit private suits against states or state officials in the face of Eleventh Amendment immunity. Something more than Section 1's imposition of substantive duties on the states seems to be needed before one may conclude that Congress has clearly stated its intent to abrogate immunity. The clear implication of *Fitzpatrick* is that this something more is a Congressional enactment made pursuant to its § 5 enforcement powers. *See Vakas v. Rodriquez,* 728 F.2d 1293, 1296 (10th Cir.1984) ("Express waiver of the Eleventh Amendment by congressional action is required under the enforcement mechanism of the Fourteenth Amendment.... [citations omitted]. Where, as here, Congress has chosen not to enact an enforcement scheme *directly* addressing the appellant's situation, the state retains

its sovereign immunity".) [citations omitted]

Acting under § 5, Congress has repeatedly enacted legislation that has clearly stated Congress' intention to abrogate states' immunity from damage actions in a variety of contexts. *See, e.g.* 29 U.S.C. § 794(a) (Rehabilitation, Comprehensive Services and Developmental Disabilities Act of 1978); 29 U.S.C. § 626(b) (Age Discrimination in Employment Act); 42 U.S.C. § 2000d–7 (Title X of the Rehabilitation Act Amendments of 1986). Yet not all Congressional actions under § 5 of the Fourteenth Amendment to enforce Section 1 contain the express language to abrogate immunity required by the clear statement exception. For example, as the district court recognized, the Court has held that 42 U.S.C. § 1983 does not provide an explicitly clear statement demonstrating Congress' intent to abrogate the Eleventh Amendment. *See Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). "[N]either logic, circumstances surrounding the adoption of the Fourteenth Amendment, nor the legislative history of [§ 1983] compels, or even warrants, a leap from this proposition to the conclusion that Congress intended by the general language of the Act to overturn the constitutionally guaranteed immunity of the several states." *Quern,* 440 U.S. at 342, 99 S.Ct. at 1146. If a clear statement to abrogate was not found in *Quern,* in the context of a specific Congressional enactment to enforce Section 1's substantive provisions, it seems all the more difficult to discover one lurking in those substantive provisions themselves, bereft of any accompanying or clarifying § 5 action spelling out a cause of legislation for violation of the Amendment. The logical implication from *Quern* is that if § 1983 did not abrogate traditional Eleventh Amendment immunity, Section 1 of the Fourteenth Amendment by itself surely does not; otherwise there would have been no sovereign immunity left intact for Congress to have failed to abrogate when passing § 1983 in 1871.

Santiago, however, supported by the district court, would have us dismiss all of the above because of a reference in *Milliken v. Bradley* to language in *Fitzpatrick v. Bitzer* that speaks in general terms of federal court enforcement of the express prohibitions on state conduct contained in the substantive provisions of the Fourteenth Amendment. *Milliken,* 433 U.S. at 291, 97 S.Ct. at 2762. However, the reference in *Milliken* occurred in the context of *Milliken's* discussion of whether the remedy imposed on the school district there violated "the *Tenth* Amendment and general principles of federalism." *Id.* (emphasis added). Nowhere does *Milliken* cite to *Fitzpatrick* for the proposition that the duties imposed by Section 1 of the Fourteenth Amendment on the states abrogated their *Eleventh* Amendment immunity from damage suits. Indeed, *Fitzpatrick* cannot be cited for this principle, because it specifically found Eleventh Amendment abrogation pursuant to § 5 of the Fourteenth Amendment, not Section 1.

Santiago argues, as well, that the second exception to Eleventh Amendment immunity applies in the case of Section 1 of the Fourteenth Amendment—the waiver exception. By ratifying the amendment, he argues, states "either engaged in a rhetorical exercise, a charade, or they waived their own immunity from suit, assuming they then had such immunity to begin with." In so arguing, Santiago engages in his own rhetorical exercise, but fails to demonstrate how ratification of an amendment amounts to a waiver of immunity " 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' " *Edelman,* 415 U.S. at 673, 94 S.Ct. at 1361 (citing *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed.2d 742 (1909). As there is no sign in the legislative history of the Amendment or in its text that the states, by assenting to the imposition of certain duties upon them, also assented to the waiver of their traditional immunity from damage actions against them in federal court, we are unpersuaded that the states, in ratifying the Fourteenth Amendment, waived their Eleventh Amendment immunity under the recognized exception.

In conclusion, since Santiago's suit for compensation for emotional damages is

barred by the Eleventh Amendment, and since Section 1 of the Fourteenth Amendment fits neither the clear statement nor the state waiver exceptions to a state's immunity from damage suit in federal court, we hold that his suit is jurisdictionally barred.

### B. *Creation of a Bivens Cause of Action Against DOCS*

■ Because a federal court is without jurisdiction to hear Santiago's suit, it does not have the power to create a *Bivens* cause of action aimed directly at states or their agencies for money damages because of a violation of the Fourteenth Amendment. As *Bivens* actions are routinely dismissed against the United States itself because of sovereign immunity, *see Mack v. United States*, 814 F.2d 120, 122–123 (2d Cir.1987), so it follows that they should likewise be dismissed against states and state agencies in federal court because of Eleventh Amendment immunity as to retroactive damages.

### C. *The Equitable Claim*

Although Santiago's claim for an injunction against DOCS is not barred by the Eleventh Amendment's ban on retroactive damage actions, it too must be dismissed because it does not follow the requirement, established in *Ex Parte Young*, that a plaintiff seeking prospective relief from the state must name as defendant a state official rather than the state or a state agency directly, even though in reality the suit is against the state and any funds required to be expended by an award of prospective relief will come from the state's treasury. *See Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 102, 104–05, 104 S.Ct. 900, 910–11, 79 L.Ed.2d 67 (1984). Santiago has not used this *Ex Parte Young* "fiction," in framing his suit, and therefore his equitable cause of action must also be dismissed.

Reversed with instructions to dismiss the complaint against DOCS.