**Larry GILMORE–BEY, Plaintiff,**

v.

**Thomas COUGHLIN, et al., Defendants.**

**No. 93 Civ. 6592 (CLB).**

United States District Court,
S.D. New York.

June 5, 1996.

---

148

Mitchell Karlan, Gibson, Dunn & Crutcher, New York City, for plaintiff.

Lisa Dell, Attorney General of the State of New York, New York City, for defendants.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

On September 21, 1993, the plaintiff, Mr. Larry Gilmore–Bey, who is a member of the Moorish Science Temple of America ("MSTA"), a religious sect, filed this action alleging violations of his rights under the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb *et seq.* ("RFRA"), the Free Exercise and Establishment Clauses, the Equal Protection Clause, and under New York State law, while he was incarcerated at Greenhaven Correctional Facility and other correctional facilities operated and controlled by the defendants.

The remaining defendants in this action are Mr. Thomas Coughlin, the former Commissioner of the New York Department of Correction Services ("DOCS"), Mr. Philip Coombe, Jr., the former Deputy Commissioner of DOCS, Reverend Doctor Earl Moore, who was, at all relevant times, the Assistant Commissioner for Ministerial and Family Services of DOCS, Mr. Iman Warith–Deen Umar, who was the Administrator and Coordinator of Islamic Affairs of DOCS, and Mr. Robert Hanslmaier, who was the Acting Superintendent at Woodburne Correctional Facility, Mr. Christopher Artuz, who was the Superintendent at Greenhaven Correctional Facility, and Mr. Louis Mann, who was the Superintendent at Shawangunk Correctional Facility. This action was dismissed as to defendant Mr. Dennis Bliden.

■ By Stipulation and Order approved by this Court dated February 21, 1995, all claims for equitable relief relating to the plaintiff's observance of the MSTA faith have been resolved. This Court in its discretion denied plaintiff's request for declaratory relief on May 31, 1996.[1] Accordingly, plaintiff's only remaining claims are for money damages. Presently before this Court for consideration is defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56. Also before this Court is plaintiff's motion for partial summary judgment.

The Second Amended Complaint filed on May 18, 1995 contains five separate claims. Plaintiff's first claim is that, as an MSTA follower, his right to free exercise of religion has been "substantially burdened" by the defendants in violation of the RFRA. Plaintiff's second, third and fourth claims are brought pursuant to § 1983 of Title 42 and allege violations of the Free Exercise Clause,

---

1. The decision of whether to grant declaratory relief in this case rests within the sound discretion of the district court. *See Texport Oil Co. v. M/V Amolyntos,* 11 F.3d 361 (2d Cir.1993). In its discretion, this Court determined that there is no serious need for declaratory relief. Despite the three-year sunset provision attached to the equitable relief, once a consent order has been entered, and policies have been established, DOCS has no institutional motivation to treat a particular religious group differently.

the Establishment Clause, and the Equal Protection Clause. Plaintiff's final claim alleges that his right to free exercise of religion has been violated under the Constitution and laws of the State of New York. (Second Amended Complaint ¶¶ 73–90).

Plaintiff claims that during the time that he was incarcerated in facilities operated and controlled by defendants, he was "intentionally refused ... fundamental religious liberties" as an MSTA follower. (*Id.* ¶ 51). Plaintiff asserts that "defendants denied [him] opportunities to exercise [his] religious beliefs that [we]re routinely granted to other, more favored, religious groups in correctional facilities operated by defendants." (*Id.* ¶ 52). Specifically, plaintiff claims that he requested but defendants refused to permit him: (1) to attend congregate religious services for MSTA followers; (2) to observe MSTA holy days; (3) to wear the religious accoutrements of the MSTA faith, namely a fez; and (4) to designate his MSTA faith in the DOCS official records. (*Id.* ¶ 50).

It is further alleged that "[d]efendants routinely.... engaged in the retaliatory transfer of Mr. Gilmore–Bey from one correctional facility to another in order to suppress the spread of the [MSTA] religion and to prevent [its] followers from seeking the religious freedoms denied to them." (*Id.* ¶ 65). Plaintiff claims that he was "wrongfully transferred" from Green Haven to Shawangunk Correctional Facility in retaliation for his filing of a grievance requesting religious services. (*Id.* ¶ 66). While at Shawangunk, plaintiff alleges that he learned that unidentified employees of defendants "had placed a false report in his files which wrongly stated that he had been convicted of murder in Missouri." (*Id.* ¶ 67). After the false information was expunged from plaintiff's record, he was transferred to Woodburne Correctional Facility. (*Id.*). The Second Amended Complaint alleges that during "the time periods between transfers," plaintiff's requests for "religious freedoms" were not addressed. (*Id.* ¶ 68).

### Discussion

For the reasons that follow, plaintiff's motion for partial summary judgment on the issue of liability under his RFRA claim is denied, and defendants' motion for summary judgment is granted as to plaintiff's remaining claims for money damages. Plaintiff's RFRA claim, his Free Exercise and Establishment Clause claims, and his Equal Protection Clause claim are dismissed. This Court declines to exercise supplemental jurisdiction over the remaining New York State law claim, so that claim is dismissed without prejudice.

### The Religious Freedom Restoration Act Claim

█ The defendants argue that plaintiff's RFRA claim against them in their official capacities must be dismissed based upon Eleventh Amendment immunity. This Court agrees. RFRA does not abrogate the Eleventh Amendment bar to actions brought against state officials for monetary damages.

Plaintiff argues that the RFRA clearly and unequivocally abrogates Eleventh Amendment immunity. In support of this proposition, plaintiff cites *Rourke v. New York State Dep't of Correctional Services*, 915 F.Supp. 525, 540 (N.D.N.Y.1996), where the court concluded that "[t]he language of [the RFRA] unequivocally sets forth Congress' intent to abrogate the [E]leventh [A]mendment with respect to claims brought pursuant to this Act." In *Rourke*, the court reasoned that the RFRA provides that the "[g]overnment shall not substantially burden a person's free exercise of religion...." and "the term 'government' includes a[n] agency ... and official (or other person acting under color of state law) of ... a State...." 42 U.S.C. § 2000bb–1(a), –2(1). The court further noted that the purposes of the RFRA are "to restore the compelling interest test ... and to guarantee its application in *all cases* where free exercise of religion is substantially burdened...." 42 U.S.C. § 2000bb(b)(1). The court then reasoned that this statutory language,

"particularly when read together with the definition of 'government' in the Act, clearly supports a finding that the Congress intended to abrogate the [E]leventh [A]mendment with respect to [RFRA]."

*Id.* at 540.

This Court is unpersuaded by the reason-

ing set forth in *Rourke*.[2] The Second Circuit has noted, "Congressional abrogation occurs ... 'only [when Congress] mak[es] its intention unmistakably clear in the language of the statute.'" *Santiago v. New York State Dep't of Correctional Servs.*, 945 F.2d 25, 29 (2d Cir.1991) (quoting *Dellmuth v. Muth,* 491 U.S. 223, 228, 109 S.Ct. 2397, 2400, 105 L.Ed.2d 181 (1989)). This Court does not read the RFRA statute to demonstrate the explicit and unequivocal intent of Congress to abrogate Eleventh Amendment immunity.

RFRA specifically provides:

"The Congress finds that—

(1) the framers of the Constitution, recognizing free exercise of religion as an unalienable right, secured its protection in the First Amendment to the Constitution;

(2) laws "neutral" toward religion may burden religious exercise as surely as laws intended to interfere with religious exercise;

(3) governments should not substantially burden religious exercise without compelling justification;

(4) ... the Supreme Court virtually eliminated the requirement that the government justify burdens on religious exercise imposed by laws neutral toward religion; and

(5) the compelling interest test as set forth in prior Federal court rulings is a workable test for striking sensible balances between religious liberty and competing prior governmental interests."

42 U.S.C. § 2000bb(a)

The purposes of RFRA are:

"(1) to restore the compelling interest test as set forth in *Sherbert v. Verner,* 374 U.S. 398, [83 S.Ct. 1790, 10 L.Ed.2d 965] (1963) and *Wisconsin v. Yoder,* 406 U.S. 205 [92 S.Ct. 1526, 32 L.Ed.2d 15] (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened; and

(2) to provide a claim or defense to persons whose religious exercise is substantially burdened by government."

42 U.S.C. § 2000bb(b) (1994).

In *Jolly v. Coughlin,* 76 F.3d 468, 474–75 (2d Cir.1996), our Court of Appeals held that "[i]n enacting RFRA in 1993, Congress sought to restore the 'compelling interest' test for defenses to claims that a facially neutral law of general applicability substantially burdens the free exercise of religion—a test that had been abandoned by the Supreme Court...." Based upon the plain language of the statute, Congress' manifest intention was to restore the "compelling governmental interest" standard. Without more, this Court cannot conclude that Congress also intended to eliminate Eleventh Amendment immunity in actions brought under RFRA. Thus, plaintiff's RFRA claim against the defendants in their official capacities must be dismissed.

 With respect to plaintiff's RFRA claim against the defendants in their individual capacities, the defendants argue that they are entitled to qualified immunity. In *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982), the Supreme Court explained:

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a person reasonably would have known.... On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful.... If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably

---

**2.** "[A] district court decision does not 'clearly establish' the law, even in its own circuit." *Richardson v. Selsky,* 5 F.3d 616, 623 (2d Cir. 1993) (citing *Hawkins v. Steingut,* 829 F.2d 317, 321 (2d Cir.1987)).

competent public official should know the law governing his conduct."

RFRA, a statute which has retroactive application, was passed in 1993. The case law on RFRA only began to develop after the original complaint was filed in this action, also in 1993, and long after 1985 when plaintiff was first incarcerated. Therefore, the defendants could not "reasonably have been expected to surmise that their alleged conduct violated this new statute." *Muhammad v. New York Dep't of Corrections*, 904 F.Supp. 161, 201 (S.D.N.Y.1995) (Preska, J.).

The defendants clearly are entitled to qualified immunity for acts taken prior to the effective date of the statute, November 16, 1993. As found in *Woods v. Evatt*, 876 F.Supp. 756, 771–72 (D.S.C.), *aff'd*, 68 F.3d 463 (4th Cir.1995):

> "The RFRA was clearly a change in the law and was a clear and determined break from the interpretation of that law by the Supreme Court and the appellate courts. As its legislative history makes clear, the law was intended to change the standard under which claims of religious freedoms and/or discrimination were considered."

As to the alleged misconduct following the passage of the RFRA, this Court concludes that defendants nevertheless are entitled to qualified immunity. During the relevant period, "the Court of Appeals for the Second Circuit had not had occasion to construe the statute, and only a handful of district court judges in the Southern and Eastern Districts of New York had issued RFRA opinions." *Muhammad*, 904 F.Supp. at 202. In addition, "other courts had cast doubts on the constitutionality of the statute." *Id.* Therefore, the law cannot be said to have been clearly established at the time of the alleged misconduct underlying this action, and the defendants are protected under the doctrine of qualified immunity. Plaintiff's RFRA claim against the defendants in their individual capacities is likewise dismissed.

*The Free Exercise Clause*

In this case, plaintiff contends that DOCS has interfered with his free exercise of religion by refusing to permit MSTA inmates (1) to identify their faith as MSTA on the official records of DOCS; (2) to observe MSTA religious holidays; (3) to gather for congregate worship and religious study; or (4) to wear their religious headgear, the fez.

Plaintiff is not seeking damages under the Free Exercise Clause of the First Amendment to the Constitution of the United States for any conduct after the enactment of the RFRA. With respect to the period before the enactment of the RFRA, plaintiff claims damages under the Free Exercise Clause against defendants in their individual capacities for two distinct periods. Prior to the Supreme Court's decision in *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), it was clearly established law that the burdening of religiously motivated conduct could only be upheld if the state could show that such action was necessary to serve a "compelling state interest." In *O'Lone*, the standard changed when the Supreme Court concluded that "a prison regulation [that] impinges on [an] inmate['s] constitutional rights ... is [nevertheless] valid if it is reasonably related to legitimate penological interests." *Id.* at 349, 107 S.Ct. at 2404 (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987)). The Supreme Court has explained that:

> "In our view, such a standard is necessary if prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations. Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration."

*Turner*, 482 U.S. at 89, 107 S.Ct. at 2261. Our Court of Appeals has made clear that "the *O'Lone* reasonableness test continues to have vitality for claims brought directly under the First Amendment—for the simple reason that a congressional enactment [the RFRA] cannot modify the Supreme Court's constitutional interpretation." *Jolly v. Coughlin*, 76 F.3d at 475.

Plaintiff claims that *O'Lone* applies to the defendants' alleged misconduct that occurred between 1987 and 1993, prior to the enactment of the RFRA, and the "compelling state interest" rule applies to the relevant conduct in this action that occurred between 1985 and 1987. However, plaintiff's damages claims brought pursuant to 42 U.S.C. § 1983 are governed by a three year statute of limitations. Plaintiff filed his complaint on September 21, 1993, and any claims based on events prior to September 21, 1990 are thus time-barred. Moreover, the Second Amended Complaint does not rely on any events that occurred during 1985 through 1987. (Second Amended Complaint ¶ 3). This action therefore cannot be considered a "hybrid" case under which the defendants' alleged actions would be subject to differing standards. The plaintiff's free exercise claim is governed by the *O'Lone* reasonableness standard alone.

■ Based upon the papers submitted by both parties and the oral argument heard on May 31, 1996, this Court finds that the policies adopted by DOCS are rationally related to its legitimate interest in running its facilities safely and efficiently. Contrary to the plaintiff's assertions, this Court finds that defendants acted reasonably pursuant to Directive 4202 which provides that:

> "[i]n recognition of the [F]irst [A]mendment right to freedom of religion it is the policy of the Department to extend to its committed offenders as much spiritual assistance as possible as well as to provide as many opportunities as feasible for the practice of [an inmate's] chosen faith. These goals shall be met through the scheduling of worship services, bona fide religious activities, counseling and religious study consistent with the safe and secure operation of correctional facilities."

Def.'s Exhibit 1, Directive 4202 A. Policy.

By the clear language of Directive 4202, the religious accommodations extended to DOCS inmates, including MSTA followers, must be consistent with the safe and secure operation of the penal institution. It is well established that corrections officials have a strong interest in maintaining internal order in their facilities, and legitimate administrative, logistical and security concerns underlie the DOC system's ability to provide religious accommodations to its inmates' numerous faiths.

As an MSTA follower, plaintiff explains that he was entitled to gather weekly on Friday evenings for congregate worship services and on Sunday afternoons for Sunday School. Male MSTA followers also wear a fez or turban when performing acts of a religious nature, such as praying. MSTA members observe certain holy days that are not recognized by any other faith: (1) January 8, the birth of the Divine Prophet Noble Drew Ali; (2) January 15, the Moorish New Year; (3) March 17, Tag Day; (4) the Young Muslim League Anniversary in December; and (5) the Sisters' Auxiliary Anniversary in December. (Pl.'s Mem. at 3–4). Plaintiff contends that he was denied the right to congregate for religious services, to wear the religious fez, and to observe the religious holidays. In addition, plaintiff asserts that DOCS refused to allow him to identify himself as an MSTA follower in its official records.

This Court finds no violation. DOCS permits its inmates to schedule visits from outside volunteer religious advisors, an option that was available to plaintiff. (Def.'s Mem. at 14). The fact that no MSTA spiritual advisor has visited plaintiff at any of the correctional facilities where he has been incarcerated is not attributable to defendants. This Court finds that it was not until 1995 that DOCS was apprised of the practice and tenets of the MSTA faith, when Brother R. Love–El, an ecclesiastical authority on MSTA, established formal contact with the DOCS Division of Family and Ministerial Services. (Def.'s 3(G) Statement at 3). Thereafter, the MSTA faith was integrated into the DOC system, and DOCS took steps to accommodate plaintiff's religious practices as an MSTA follower. In addition, once DOCS determined that the fez was a legitimate MSTA headcovering, which did not present any institutional safety or security concerns, plaintiff was granted permission to wear the fez. (*Id.*) This Court finds that the specific actions taken by DOCS with regard to plaintiff's MSTA religious observa-

tion, and the DOC system's practices with regard to inmate religious accommodation in general, are reasonably related to its legitimate interest in maintaining order and security in its penal institutions. Accordingly, this Court finds that plaintiff's free exercise claim is without merit.

### The Establishment Clause

■ Plaintiff further argues that the defendants' denial of certain religious accommodations to followers of the MSTA, while allowing inmates of other faiths those accommodations, violated his rights under the Establishment Clause. This Court finds this argument equally unavailing. The DOC system's actions "reflect a permissible purpose, i.e., providing religious accommodations to the inmates in its custody while operating within difficult economic and security constraints." *Muhammad*, 904 F.Supp. at 198. Defendants endeavored to distribute "limited resources equitably in order to provide spiritual guidance for all DOCS inmates, not to advance any one or more religious groups." *Id.* In an attempt to accommodate individual needs, DOCS established a program permitting outside religious advisors to visit inmates. (Def.'s Mem. at 17–18). The DOC system's decisionmaking is governed by its security and administrative concerns and does not "result in excessive entanglement with religion." *Muhammad*, 904 F.Supp. at 198. Accordingly, this Court dismisses plaintiff's claim that his rights have been violated under the Establishment Clause.

### Equal Protection

■ Plaintiff's claim that the religious accommodation policies adopted by DOCS violate his right to equal protection is likewise without merit. These policies are reasonably related to legitimate penological interests in being able to manage the correctional facilities effectively while maintaining security. This Court therefore finds that MTSA inmates at DOCS are not being treated differently from other inmates and, to the extent they might be, such differences are "rationally related" to legitimate penological interests.

### Retaliation

■ Furthermore, plaintiff has not adduced any particularized evidence of improper motive regarding his allegedly wrongful transfers or the incorrect report of a murder conviction that was placed in his DOCS institutional file. Contrary to plaintiff's allegations, this Court agrees that "the evidence demonstrates that plaintiff's transfer was based on legitimate administrative and penological concerns and in accordance with plaintiff's previously expressed [transfer] requests." (Alexander Aff. ¶ 8).

■ Plaintiff's allegation that a report was placed in his institutional file which incorrectly stated that his prior out-of-state conviction was for Murder, rather than Armed Robbery, "to prevent his transfer . . . and to interfere with [his] observance of the MSTA faith" is without merit. The incorrect report of a conviction for Murder was entered in the institutional file when plaintiff first entered the DOC system in 1985. (*Id.* ¶ 10). The false report could not have been placed in plaintiff's file as a measure to either prevent his transfer or interfere with his religious practices during his incarceration as alleged in the Second Amended Complaint. Therefore, plaintiff's claim of retaliation also must be dismissed.

### Conclusion

Accordingly, this Court denies plaintiff's motion for partial summary judgment and grants the defendants' motion for summary judgment denying plaintiff's RFRA claim, his Free Exercise and Establishment Clause claims, his Equal Protection claim, and his retaliation claim. This Court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claim, and that claim is therefore dismissed without prejudice.

The Clerk shall defer entry of judgment until the issue of attorneys' fees is resolved by Magistrate Judge Smith.

SO ORDERED.