COMMACK SELF–SERVICE KOSHER MEATS INC. d/b/a Commack Kosher, Evelyn Yarmeisch, Brian Yarmeisch and Jeffrey Yarmeisch, Plaintiff,

v.

The STATE OF NEW YORK, and "John Does" and "Jane Does" Numbers "1" Through "5"; the names "John Doe" and/or "Jane Doe" being fictitious as the names of said defendants are presently unknown to the plaintiffs, Defendant.

No. 96 CV 2313 (NG)(ETB).

United States District Court, E.D. New York.

Feb. 13, 1997.

Robert J. Dinnerstein, Dinnerstein & Lesser, Jericho, NY, for plaintiff.

Marion R. Buchbinder, Attorney General Office, State of New York, New York City, for defendant.

### ORDER

GERSHON, District Judge:

Plaintiffs, Commack Self–Service Kosher Meats Inc. ("Commack") and its principals, Evelyn Yarmeisch, Brian Yarmeisch and Jeffrey Yarmeisch, market kosher meats and foodstuffs which are subject to the provisions of the Agriculture and Markets Law § 201–a *et seq.* Plaintiffs allege that they have been cited for violations of that law and challenge its constitutionality. They assert claims under (1) 42 U.S.C. § 1983 for violation of the First Amendment's Establishment Clause and the Fourteenth Amendment's Equal Protection Clause and (2) the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.*, for violation of the First Amendment's Free Exercise Clause. Plaintiffs also assert claims for violations of the New York Civil Rights Law § 40–c and of the New York State Constitution, Article 1, § 11. The complaint seeks a declaratory judgment that plaintiffs' rights have been

violated, punitive and compensatory damages, and attorney's fees.

Defendant State of New York argues that its sovereign immunity under the Eleventh Amendment bars this action and moves, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss the complaint. In the alternative, the State seeks to dismiss the complaint, under Rule 12(b)(6), for failing to state a claim upon which relief can be granted. Plaintiffs do not dispute that Section 1983 does not abrogate the States' Eleventh Amendment immunity. *See Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Rather, they contend that Congress, in the RFRA, abrogated the States' Eleventh Amendment immunity from suits alleging violations of the Free Exercise Clause.

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Eleventh Amendment confirms two fundamental principles in our federal system: first, that each State is a sovereign entity, and second, that "[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." *Seminole Tribe of Florida v. Florida,* —— U.S. ——, ——, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252 (1996). Accordingly, the Eleventh Amendment bars actions brought in federal courts by citizens against unconsenting States. *See id.; Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 97–103, 104 S.Ct. 900, 906–10, 79 L.Ed.2d 67 (1984).

■ The States' sovereign immunity is not absolute, but can be abrogated by Congress, acting under Section 5 of the Fourteenth Amendment. *See Seminole Tribe of Florida,* —— U.S. at ——, 116 S.Ct. at 1125 (1996) (recognizing that "the Fourteenth Amendment, by expanding federal power at the expense of state autonomy, had fundamentally altered the balance of state and federal power struck by the Constitution."); *Atascadero State Hospital v. Scanlon,* 473 U.S.

234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985) ("[T]he Eleventh Amendment is 'necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment....' *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456 [96 S.Ct. 2666, 2671, 49 L.Ed.2d 614] (1976)"). To determine whether Congress has abrogated the States' sovereign immunity, a court must ask two questions: first, whether Congress has acted pursuant to a valid exercise of power, and second, whether Congress has unequivocally expressed its intent to abrogate the immunity. *See Seminole Tribe of Florida,* —— U.S. at ——, 116 S.Ct. at 1123. Plaintiffs do not contend that Congress enacted the RFRA under an invalid exercise of power. The issue presented here is solely whether Congress intended the RFRA to abrogate the States' sovereign immunity.

■ "Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985); *Santiago v. New York State Dep't of Correctional Servs.,* 945 F.2d 25, 29 (2d Cir.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992). In *Dellmuth v. Muth,* the Supreme Court proclaimed, "Lest *Atascadero* be thought to contain any ambiguity, we reaffirm today that in this area of the law, evidence of congressional intent must be both unequivocal and textual." *Dellmuth v. Muth,* 491 U.S. 223, 230, 109 S.Ct. 2397, 2401, 105 L.Ed.2d 181 (1989).

■ The RFRA was enacted by Congress as a response to the Supreme Court's decision in *Employment Division v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). *See* S.Rep. No. 103–111, at 1, *reprinted in* 1993 U.S.C.C.A.N. 1892, 1893. In that case, two Native Americans challenged Oregon's controlled substances law, which banned their use of peyote in religious observances. The Supreme Court held that the First Amendment's Free Exercise Clause did not prevent a State from prohibiting the sacramental use of peyote. In so ruling, the

Court repudiated the "compelling interest" test when evaluating a facially neutral law of general applicability which burdens a religious practice.

The purpose of the RFRA is to restore the "compelling interest" test. Its text begins with the following provisions:

### § 2000bb. Congressional findings and declaration of purposes

#### (a) Findings

The Congress finds that—

(1) the framers of the Constitution, recognizing free exercise of religion as an unalienable right, secured its protection in the First Amendment to the Constitution;

(2) laws "neutral" toward religion may burden religious exercise as surely as laws intended to interfere with religious exercise;

(3) governments should not substantially burden religious exercise without compelling justification;

(4) in *Employment Division v. Smith*, 494 U.S. 872 [110 S.Ct. 1595, 108 L.Ed.2d 876] (1990) the Supreme Court virtually eliminated the requirement that the government justify burdens on religious exercise imposed by laws neutral toward religion; and

(5) the compelling interest test as set forth in prior Federal court rulings is a workable test for striking sensible balances between religious liberty and competing prior governmental interests.

#### (b) Purposes

The purposes of this chapter are—

(1) to restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 [83 S.Ct. 1790, 10 L.Ed.2d 965] (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 [92 S.Ct. 1526, 32 L.Ed.2d 15] (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened; and

(2) to provide a claim or defense to persons whose religious exercise is substantially burdened by government.

42 U.S.C. § 2000bb. The RFRA goes on to provide:

### § 2000bb–1. Free exercise of religion protected

#### (a) In general

Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.

#### (b) Exception

Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

#### (c) Judicial relief

A person, whose exercise of religion has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution.

42 U.S.C. § 2000bb–1. The term "government" is defined as "a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States, a State, or a subdivision of a State." *Id.* at § 2000bb–2(1).

The text of the RFRA articulates, in detail, that its sole purpose is to compel federal courts to apply the "compelling interest" test when reviewing claims alleging a violation of the free exercise of religion. *See Jolly v. Coughlin*, 76 F.3d 468, 474–75 (2d Cir.1996) ("In enacting the RFRA in 1993, Congress sought to restore the 'compelling interest' test for defenses to claims that a facially neutral law of general applicability substantially burdens the free exercise of religion—a test that had been abandoned by the Supreme Court ..."). Congress, in the RFRA, makes no reference to either the Eleventh Amendment or the States' sovereign immunity. The legislative history of the Act (assuming it were treated as relevant, *but see Dell-*

*muth,* 491 U.S. at 230, 109 S.Ct. at 2401–02) would not help plaintiffs, for it confirms the RFRA's textual declaration of purpose and contains no reference whatsoever to abrogation, sovereign immunity or the Eleventh Amendment. H.R.Rep. No. 103–88 (1993), *reprinted in* 1993 WL 158058; S.Rep. No. 103–111 (1993) *reprinted in* 1993 U.S.C.C.A.N. 1892.

Plaintiffs contend that the RFRA's text, when read together with the statute's definition of "government" to include a State, indicates that Congress expressly intended to abrogate the States' sovereign immunity. No Court of Appeals has yet decided this issue. (The Court of Appeals for the Seventh Circuit has noted, in passing that, within the RFRA, "there is no indication of congressional intent to abrogate the States' Eleventh Amendment Immunity." *Mack v. O'Leary,* 80 F.3d 1175, 1177 (7th Cir.1996). However, in *Mack,* the issue presented here was not before the Court because the plaintiff sought damages, under the RFRA, only against prison officials, not the State of Illinois.) Courts within this circuit have reached differing results. *Compare Rourke v. New York State Dep't of Correctional Serv.,* 915 F.Supp. 525, 538–40 (N.D.N.Y. 1995) (accepting the argument that the definition of "government" to include State in the Act meant that Congress intended to abrogate the Eleventh Amendment) *with Gilmore–Bey v. Coughlin,* 929 F.Supp. 146, 150 (S.D.N.Y.1996) (holding that the RFRA does not "demonstrate the explicit and unequivocal intent of Congress to abrogate the Eleventh Amendment").

Plaintiff relies on an analogy between Title VII, where abrogation was found, *see Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), and the RFRA. I cannot agree that this analogy is sound. In *Fitzpatrick,* the Supreme Court noted that Title VII's language was amended to eliminate a prior expressed State exclusion. *Fitzpatrick,* 427 U.S. at 449 n. 2, 96 S.Ct. at 2668 n. 2. ("The express exclusion of 'a State or political subdivision thereof'" in the former Act was stricken and amended "to include within the definition of 'employee' those individuals 'subject to the civil service laws of a State government, governmental agency or political subdivision.'"). The same manifestation of Congressional intent to abrogate the States' sovereign immunity is absent within the text of the RFRA.

■ Mere statutory references to the States do not in themselves signal an abrogation of immunity. *Dellmuth,* 491 U.S. at 232, 109 S.Ct. at 2402–03. In *Atascadero, supra,* the Supreme Court held that the Rehabilitation Act, which created a cause of action against "any recipient of federal assistance," did not abrogate the States' sovereign immunity even though the States were recipients of federal assistance. 473 U.S. at 245–46, 105 S.Ct. at 3148–49. Even where the Supreme Court recognized that the States had an "important role" within the structure of a federal statute (The Education of the Handicapped Act) and that the States were "logical defendants" under that statute, an unequivocal textual declaration of Congress's intent to abrogate the States' sovereign immunity was still required. *See Dellmuth,* 491 U.S. at 232, 109 S.Ct. at 2402–03.

The RFRA provides that a person whose religious exercise has been burdened may "obtain appropriate relief against a government." 42 U.S.C. § 2000bb–1(c). In using those words, Congress did not unmistakably evince an intent to abrogate immunity. On the contrary, it is at least as likely that Congress, mindful of the Eleventh Amendment, recognized that "appropriate relief" would exclude any action against a State directly, although, "appropriate relief" might include a claim for a prospective injunction against state officials acting in their official capacities, *see Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), or an action for damages against state officials acting in their individual capacities, *see Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Mack v. O'Leary,* 80 F.3d 1175, 1177 (7th Cir.1996).

In sum, the language of the RFRA falls short of manifesting the clear intent necessary to abrogate the Eleventh Amendment. Rather, the provisions at issue create only a general authorization to assert Free Exercise

**70**

claims, and "[a] general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment. When Congress chooses to subject the States to federal jurisdiction it must do so specifically." *Atascadero,* 473 U.S. at 246, 105 S.Ct. at 3149 (citation omitted). Given the Supreme Court's insistence that abrogation be found only where Congress's intent has been clearly and unmistakably expressed, I cannot conclude that the RFRA, with its sole textually expressed purpose of restoring the "compelling interest" test in cases involving the free exercise of religion, was intended to abrogate Eleventh Amendment immunity. *See Gilmore-Bey* 929 F.Supp. at 149–151 ("Without more, this Court cannot conclude that Congress also intended to eliminate Eleventh Amendment immunity in actions brought under the RFRA.").

█ The State's motion to dismiss under Rule 12(b)(1) is granted. Because plaintiffs' claims against the State under the RFRA and Section 1983 are dismissed, the court declines to exercise supplemental jurisdiction over plaintiffs' claims against the State under New York Civil Rights Law § 40–c and the New York State Constitution, Article 1, § 11. *See* 28 U.S.C. § 1367. In any event, the Eleventh Amendment would bar any federal adjudication over claims based upon New York State law, in the absence of an independent showing that the State has waived its sovereign immunity. *See Pennhurst,* 465 U.S. at 119–121, 104 S.Ct. at 918–19. Since no action has been taken with regard to the "John Doe" defendants named in the caption, the Clerk is directed to dismiss the complaint in its entirety.