# IN THE SUPREME COURT OF IOWA

No. 12–2055

Filed March 28, 2014

**TINA LEE,**

Appellee,

vs.

**STATE OF IOWA** and **POLK COUNTY CLERK OF COURT,**

Appellants.

Appeal from the Iowa District Court for Polk County, James M. Richardson, Judge.

Defendants appeal the district court's remand order that reinstated plaintiff to her former employment and awarded wages and benefits. **AFFIRMED.**

Thomas J. Miller, Attorney General, Jeffrey S. Thompson, Deputy Attorney General, and Jeffrey C. Peterzalek and Meghan L. Gavin, Assistant Attorneys General, for appellants.

Paige E. Fiedler and Brooke C. Timmer of Fiedler & Timmer, P.L.L.C., Urbandale, for appellee.

**WATERMAN, Justice.**

This case returns to us on defendants' appeal following a remand. On October 29, 2007, after a jury found the State terminated plaintiff in violation of her right to self-care leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2612(a)(1)(D) (2000), the district court awarded plaintiff money damages and ordered the State to reinstate her to her former position in the Polk County Clerk of Court Office. Defendants appealed and successfully requested a stay of plaintiff's reinstatement pending the outcome. In *Lee v. State* (*Lee I*), we held sovereign immunity precluded plaintiff's judgment for money damages against the State. 815 N.W.2d 731, 743 (Iowa 2012). We remanded the case for the district court to determine plaintiff's entitlement to prospective injunctive relief against a state official under *Ex parte Young*, 209 U.S. 123, 155–56, 28 S. Ct. 441, 452, 52 L. Ed. 714, 727 (1908). *Lee I*, 815 N.W.2d at 743. On October 18, 2012, the district court again ordered plaintiff reinstated and awarded her lost wages and benefits from the date of the original 2007 reinstatement order. The district court concluded that plaintiff was entitled to reinstatement as a form of injunctive relief and that the State had waived its sovereign immunity by seeking a stay of the reinstatement order and promising to pay plaintiff's interim wages and benefits if we affirmed the 2007 order.

Defendants nevertheless contend that the new reinstatement order should be reversed because plaintiff failed to adequately plead claims for such relief under *Ex parte Young* and the award of wages since 2007 is barred by sovereign immunity. We disagree. Plaintiff's pleadings were sufficient to preserve her right to *Ex parte Young* remedies, and the parties litigated the reinstatement remedy by consent. Further, this case is strikingly similar to *Barnes v. Bosley* in which the plaintiff was

wrongfully terminated from the St. Louis City Circuit Court Clerk's Office. 828 F.2d 1253, 1255 (8th Cir. 1987). We agree with the Eighth Circuit Court of Appeals holding in that case: the Eleventh Amendment to the United States Constitution does not bar an award of wages and benefits for the period a reinstatement order was stayed. *See Barnes*, 828 F.2d at 1257. We therefore affirm the district court's 2012 order.

## I. Background Facts and Proceedings.

On November 10, 2004, after taking FMLA leave to cope with anxiety, Tina Lee was terminated from her employment with the judicial branch of the State of Iowa, in the office of the Polk County Clerk of Court. Lee sued the State of Iowa and the Polk County Clerk of Court, alleging violations of her FMLA rights. A jury ultimately found in favor of Lee and awarded her past lost earnings. The district court awarded additional amounts for Lee's attorney fees, litigation expenses, and interest and ordered her reinstated to her former position. Additional detail concerning Lee's employment and the parties' claims and defenses are set forth in *Lee I. See* 815 N.W.2d at 734–35. We will now focus on the facts relevant to this postremand appeal.

At the outset of her lawsuit, Lee demanded the following remedies in her petition's prayer for relief:

> [J]udgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate her for her injuries and damages, for liquidated damages, for interest as allowed by law, for attorneys' fees, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Family and Medical Leave Act.

The case proceeded to trial, which commenced September 10, 2007. On the witness stand, Lee asked the court to reinstate her to her former position, and defendants cross-examined her on the propriety of

reinstatement in light of Lee's soured relationship with her supervisor in the clerk's office. Outside the presence of the jury, the district court discussed the remedy of reinstatement with the parties, and defendants acknowledged "reinstatement is one of the equitable remedies available to the Court if the jury concludes that there was liability." The district court responded, "That's an agreement by both parties, that if there's a finding for the Plaintiff this Court has the subject matter jurisdiction to reinstate the Plaintiff." The parties also stipulated the issue of front pay would be reserved for the district court.

Two claims under the FMLA were submitted to the jury: wrongful discharge and retaliation. On September 13, the jury found in favor of Lee on both claims and awarded her damages for past lost earnings in the amount of $165,122. Defendants moved for a judgment notwithstanding the verdict, arguing sovereign immunity precluded judgment against the State. Lee resisted this motion and filed her own posttrial "Motion for Reinstatement and Other Equitable Relief," requesting that the court order defendants to reinstate her, adopt an FMLA retaliation policy, and provide all employees with FMLA training. Defendants resisted, arguing reinstatement was impractical. On October 15, the district court held a hearing on the posttrial motions. The district court ruled on the record in favor of Lee, ordering her reinstatement.

The district court memorialized its oral rulings in a written order entered October 29. The district court concluded Congress abrogated the State's sovereign immunity as to the self-care provision of the FMLA. The district court therefore awarded Lee past lost earnings in the amount of the jury verdict of $165,122, with $19,127 in prejudgment interest, plus $68,109 in attorney fees and $5734 in litigation expenses. The

district court ordered the State to reinstate Lee and pay her lost wages and benefits in the amount of $1146 weekly from the date of the jury verdict until the date of her reinstatement. Additionally, for the purposes of retirement benefits and FMLA leave, the court ordered defendants to credit Lee for years of service as if she had never been terminated.

Defendants filed a notice of appeal and a "Motion to Stay All Proceedings Pending Appeal without Filing a Supersedeas Bond." In the motion to stay, defendants represented to the district court,

> [t]he plaintiff will not suffer any irreparable harm or injury if the district court stays all proceedings. If the Supreme Court affirms the district court, then the State of Iowa will pay the judgment, plus any amounts owed to the plaintiff during the time she should have been reinstated and when she is reinstated. Thus, the plaintiff will be made whole.

Lee agreed to stay collection of the monetary judgment, but asked the district court to compel her reinstatement.

In a January 25, 2008 ruling on the motion to stay, the district court concluded:

> Plaintiff here has shown that her loss has been, and continues to be, substantial. A stay of reinstatement would require Plaintiff to wait another 18–24 months before allowing her to return to work. This delay in salary and benefits would surely cause significant harm to Plaintiff as she has been unable to find comparable employment.

The district court also considered defendants' likelihood of success on the merits, whether defendants would suffer irreparable injury in the absence of a stay, and the public interests implicated. The district court ruled all of the factors supported a denial of the stay of reinstatement and therefore ordered defendants to "immediately reinstate Plaintiff to her previous position."

On February 16, defendants asked our court to stay Lee's reinstatement during their appeal, repeating their assurance that Lee

would not suffer irreparable harm from a stay. We granted defendants' motion, staying Lee's reinstatement. We transferred the case to the court of appeals, which affirmed the judgment in favor of Lee. We granted defendants' application for further review.

We held the appeal in abeyance pending a decision by the United States Supreme Court on the issue of whether the self-care provision of the FMLA validly abrogated the states' sovereign immunity from suit. That decision, *Coleman v. Court of Appeals of Maryland*, held Congress failed to "identify a pattern of constitutional violations and tailor a remedy congruent and proportional to the documented violations," and therefore, Congress failed to abrogate sovereign immunity. ___ U.S. ___, ___, 132 S. Ct. 1327, 1338, 182 L. Ed. 2d 296, 307 (2012) (plurality opinion). Accordingly, we held on May 25, 2012, that sovereign immunity precluded Lee's judgment against the State for money damages. *Lee I*, 815 N.W.2d at 743. But, we noted injunctive relief remained available to Lee under the doctrine of *Ex parte Young*:

> Nevertheless, states are bound to follow the self-care provisions of the FMLA, and state employees who are wrongfully denied self-care leave are still permitted to seek injunctive relief against the responsible state official. [*Coleman*, ___ U.S. at ___, 132 S. Ct. at 1350, 182 L. Ed. 2d at 320 (Ginsburg, J., dissenting)] *(citing Ex parte Young, 209 U.S. 123, 155–56, 28 S. Ct. 441, 452, 52 L. Ed. 714, 727 (1908) (establishing proposition that suit for injunctive relief against state official does not offend sovereign immunity))*. . . .
>
> In this case, the judgment entered by the district court was predicated on legal error. Accordingly, the *noninjunctive* relief granted in the judgment cannot stand, and we must reverse the district court. We remand the case to the district court to determine what relief granted in its judgment is still available to Lee within the framework of this lawsuit, findings of the jury at trial, and the cloak of immunity protecting the State. The district court shall permit the parties to be heard on this issue and enter a new final judgment for such relief. We do not retain jurisdiction.

*Id.* (emphasis added).

On remand, Lee filed a "Motion to Enforce Order Granting Equitable Relief," requesting enforcement of the 2007 order's injunctive relief, including her reinstatement, restoration of her retirement and FMLA benefits, and lost wages and benefits of $1146 weekly from the date of the 2007 order. Lee alternatively argued the State had waived sovereign immunity by stipulating it would pay her lost wages and benefits if the reinstatement order was affirmed. Lee also moved to amend her petition to expand her prayer for relief and to specifically name Lois Leary as the Polk County Clerk of Court who fired her in 2004.

Defendants resisted Lee's motions. They argued Lee's motion to amend was untimely and beyond the scope of our remand. Defendants contended *Ex parte Young* injunctive relief is available only against state officials sued in their official capacity and asserted Lee "has never named any state official at all, let alone one named in his or her official capacity." Further, defendants argued Lee did not request prospective injunctive relief in her original petition. Defendants also challenged the characterization of lost wages and benefits as *prospective* injunctive relief, arguing that an award of lost wages and benefits is essentially a retroactive monetary award barred by sovereign immunity. Finally, defendants argued they did not waive immunity by pursuing a stay of Lee's reinstatement because they had agreed to pay Lee's lost wages only if our court affirmed the district court in *Lee I*—and we had instead reversed and remanded for further proceedings.

The district court entered its ruling on these motions on October 18, 2012. The district court found Lee's original petition suing the "Clerk of Court" was sufficient to allow prospective injunctive

remedies under *Ex parte Young*, stating "the Clerk of the Court is a state official and it is unnecessary to name him or her by his or her given name, as long as his or her official title is named." The district court found it significant that *Lee I* remanded the case to determine "what relief granted in the judgment is still available to Lee," without suggesting that the "Clerk of Court" was not a proper party. The district court ruled that the date of the original judgment, October 29, 2007, was "the effective date requiring prospective injunctive relief." The district court found:

> The stay did not change the effective date of Plaintiff's reinstatement, but prevented enforcement of such reinstatement . . . . [T]his Court finds that the Eleventh Amendment does not bar an award of pay to Plaintiff for the period during which the stay was in effect. This Court ordered prospective injunctive relief requiring future compliance and liability for payment of Plaintiff's wages and benefits during this time, which is permissible.

The district court also agreed with Lee's alternative argument, that defendants waived sovereign immunity when requesting a stay of her reinstatement. The district court concluded:

> Defendants made assertions that if the Supreme Court affirms the District Court, it will pay all damages stemming from the stay. The Supreme Court did not specifically reverse the District Court's injunctive relief, so it is still the rule of the case. If Defendants did have immunity from the monetary damages stemming from their stay of the injunctive relief, then they clearly waived it when they made the promise to pay such damages.

Thus, the district court denied Lee's motion to amend as moot and ordered defendants to immediately reinstate Lee, pay her lost wages and benefits from October 29, 2007, to the date of reinstatement in the

amount of $1146 weekly,[1] provide her retirement and FMLA benefits as if she had never been terminated, and pay postjudgment interest.

Defendants appealed, raising five issues. Defendants do not argue Lee waived her right to *Ex parte Young* relief by failing to raise the doctrine as an exception to the State's sovereign immunity defense. Rather, they argue: (1) *Ex parte Young* injunctive relief is available only in federal court, (2) Lee is not entitled to *Ex parte Young* injunctive relief because she did not specifically request it in her petition, (3) Lee's failure to name a State official as a defendant precludes *Ex parte Young* injunctive relief, (4) the 2007 order for reinstatement is not *Ex parte Young* injunctive relief, and (5) they did not waive sovereign immunity by seeking the stay of her reinstatement and promising to make her whole if her relief was affirmed in the first appeal. We retained this appeal.

## II. Standard of Review.

The availability of *Ex parte Young* remedies is a question of law. *See CSX Transp., Inc. v. Bd. of Pub. Works*, 138 F.3d 537, 541 (4th Cir. 1998) (reviewing award of *Ex parte Young* relief de novo). Accordingly, our review of the district court's award of relief under *Ex parte Young* is for correction of errors at law. *See Clinton Physical Therapy Servs., P.C. v. John Deere Health Care, Inc.*, 714 N.W.2d 603, 609 (Iowa 2006) (reviewing ruling on legal issue for correction of errors at law).

---

[1]Defendants did not argue in district court or on appeal that Lee failed to mitigate her damages or that her award should be reduced by any amount that she earned at other employment during these years. *Cf. Barnes*, 828 F.2d at 1259 (remanding case with instructions to determine the amount a comparable backpay award should have been reduced to offset plaintiff's interim earnings).

**III. Analysis.**

We begin with an overview of *Ex parte Young* injunctive relief, one of several exceptions to state sovereign immunity.[2] We discussed two exceptions to sovereign immunity in *Lee I*: a private person may sue a state directly if the state has waived its sovereign immunity, or if Congress has validly abrogated the states' sovereign immunity. *Lee I*, 815 N.W.2d at 739–43 (analyzing these two exceptions with regard to the self-care provision of the FMLA). *Ex parte Young* injunctive relief provides a third exception to state sovereign immunity, in recognition of the fact that "[a]lthough a state's constitutional sovereign immunity prevents individual enforcement of certain federal statutes against a state, such as [Fair Labor Standards Act] claims . . . , that immunity does not undermine the basic *validity* of the legislation." *Gill v. Pub. Emps. Ret. Bd. of Pub. Emps. Ret. Ass'n*, 90 P.3d 491, 497 (N.M. 2009); *see also Va. Office for Prot. & Advocacy v. Stewart*, ___ U.S. ___, ___, 131 S. Ct. 1632, 1638, 179 L. Ed. 2d 675, 686 (2011) (noting the *Ex parte Young* doctrine "has existed alongside our sovereign-immunity jurisprudence for more than a century, accepted as necessary to permit

---

[2]As we discussed in *Lee I*, " 'the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today.' " 815 N.W.2d 731, 739 (quoting *Alden v. Maine*, 527 U.S. 706, 713, 119 S. Ct. 2240, 2246–47, 144 L. Ed. 2d 636, 652 (1999)). While the phrase "Eleventh Amendment immunity" "is convenient shorthand," it is "something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Id.* at 738–39 (quoting *Alden*, 527 U.S. at 713, 119 S. Ct. at 2246–47, 144 L. Ed. 2d at 652). The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

the federal courts to vindicate federal rights" (internal quotation marks omitted)).

The waiver and congressional abrogation exceptions to sovereign immunity allow an individual to sue the state, while *Ex parte Young* allows an individual to sue a responsible state official in his or her official capacity to compel that official to comply with federal law. *Stewart*, ___ U.S. at ___, 131 S. Ct. at 1638, 179 L. Ed. 2d at 685–86 (discussing the history of *Ex parte Young*). The United States Supreme Court held in *Ex parte Young* that "a suit challenging the constitutionality of a state official's action is not one against the State." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102, 104 S. Ct. 900, 909, 79 L. Ed. 2d 67, 79 (1984). Under *Ex parte Young*, a state official who violates federal law is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct" because "[t]he state has no power to impart to him any immunity from responsibility to the supreme authority of the United States." *Ex parte Young*, 209 U.S. at 160, 28 S. Ct. at 454, 52 L. Ed. at 729. This doctrine "rests on the premise—less delicately called a 'fiction,'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Stewart*, ___ U.S. at ___, 131 S. Ct. at 1638, 179 L. Ed. 2d at 686 (citation omitted)); *see also Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 174, 116 S. Ct. 1114, 1180, 134 L. Ed. 2d 252, 339 (1996) (Souter, J., dissenting) ("The decision in *Ex parte Young*, and the historic doctrine it embodies, thus plays a foundational role in American constitutionalism, and while the doctrine is sometimes called a 'fiction,' the long history of its felt necessity shows it to be something much more estimable . . . ."). Thus, a state's sovereign immunity does not

necessarily bar injunctive relief against a state official to require compliance with federal law. *See Stewart*, ___ U.S. at ___, 131 S. Ct. at 1638, 179 L. Ed. 2d at 686.

A judgment under *Ex parte Young* is limited, however, to *prospective* injunctive relief, as an award of *retroactive* money damages would run afoul of sovereign immunity. *Id.* Prospective injunctive relief is not coextensive with "equitable relief." *Edelman v. Jordan*, 415 U.S. 651, 666–67, 94 S. Ct. 1347, 1357, 39 L. Ed. 2d 662, 674–75 (1974) (holding monetary relief payable out of the state treasury is not available against a state officer merely because "the relief may be labeled 'equitable' in nature"). Nor does sovereign immunity bar all judgments with "fiscal consequences to state treasuries": such fiscal consequences are permissible if they are "the necessary result of compliance with decrees which by their terms were prospective in nature." *Id.* at 667–68, 94 S. Ct. at 1358, 39 L. Ed. 2d at 675 ("State officials, in order to shape their official conduct to the mandate of the Court's decrees, would more likely have to spend money from the state treasury than if they had been left free to pursue their previous course of conduct."); *see also Kentucky v. Graham*, 473 U.S. 159, 169 n.18, 105 S. Ct. 3099, 3107 n.18, 87 L. Ed. 2d 114, 124 n.18 (1985) ("Monetary relief that is 'ancillary' to injunctive relief also is not barred by the Eleventh Amendment."). Consequently, "a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645, 122 S. Ct. 1753, 1760, 152 L. Ed. 2d 871, 882 (2002). For example, in *Barnes*, state officials were ordered to reinstate plaintiff but obtained a stay of reinstatement pending appeal. 828 F.2d at 1255. After plaintiff prevailed on appeal,

defendants were ordered to pay plaintiff's salary for the period between the reinstatement order and the date she in fact was reinstated. *Id.* (noting backpay paid by State of Missouri).[3] We now turn to defendants' arguments against Lee's reinstatement and related relief under *Ex parte Young.*

**A. Whether *Ex parte Young* Relief is Available in State Court.**
In their appellate brief, defendants argue for the first time that *Ex parte Young* relief is available only in federal court. As a general proposition, "issues must be raised in the district court before we may review them on appeal." *Lee I*, 815 N.W.2d at 739. There is a question whether the issue is preserved. In any event, we decide the issue on the merits: *Ex parte Young* applies to state-court suits. We reached that conclusion in *Lee I* when we ordered the remand to allow the district court to determine the relief available to Lee under *Ex parte Young. See id.* at 743. The view that the doctrine is applicable in state courts is well established. *See Alden v. Maine,* 527 U.S. 706, 746–47, 119 S. Ct. 2240,

---

[3]Other federal court decisions enforcing federal laws have required states to expend their funds pursuant to prospective awards, notwithstanding the Eleventh Amendment. In *Hutto v. Finney*, the district court issued an injunction following a finding that conditions in Arkansas prisons violated the constitution. 437 U.S. 678, 683, 98 S. Ct. 2565, 2570, 57 L. Ed. 2d 522, 530 (1978). The district court later determined defendants violated the court's orders and sanctioned defendants by awarding plaintiffs their attorney fees. *Id.* at 684–85, 98 S. Ct. at 2570, 57 L. Ed. 2d at 530–31. The Supreme Court upheld this award, holding the "less intrusive power to impose a fine is properly treated as ancillary to the federal court's power to impose injunctive relief." *Id.* at 691, 98 S. Ct. at 2574, 57 L. Ed. 2d at 534. In *Milliken v. Bradley*, the state was ordered to bear half the cost of implementing comprehensive educational programs pursuant to a desegregation plan. 433 U.S. 267, 288–90, 97 S. Ct. 2749, 2761–62, 53 L. Ed. 2d 745, 761–62 (1977). In *Rye Psychiatric Hospital Center, Inc. v. Surles*, the court found defendants had improperly calculated payment rates for the plaintiff Medicaid provider. 777 F. Supp. 1142, 1147 (S.D.N.Y. 1991). The court later ordered defendants to reimburse plaintiff for inadequate payments made after the date of the original order. *Id.* State officials in *Libby v. Marshall* were ordered to pay for jail maintenance and renovations after the court found conditions at the jail violated prisoners' constitutional rights. 653 F. Supp. 359, 363 (D. Mass. 1986).

2262–63, 144 L. Ed. 2d 636, 673–74 (1999) (citing *Gen. Oil Co. v. Crain*, 209 U.S. 211, 28 S. Ct. 475, 52 L. Ed. 754 (1908), as "extending the rule of [*Ex parte Young*] to state-court suits"); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 316–17 & n.14, 117 S. Ct. 2028, 2057–58 & n.14, 138 L. Ed. 2d 438, 478 & n.14 (1997) (Souter, J., dissenting) (stating "every litigant seeking prospective relief in federal court under *Young* may obtain some adequate redress in state court as well" and noting "in every case in which *Ex parte Young* supports the exercise of federal-question jurisdiction against a state officer, *General Oil* prohibits the declination of state jurisdiction over the same officer on state immunity grounds"). The Supreme Court held in *Alden* that Eleventh Amendment immunity shelters states from suit in both federal and state court. 527 U.S. at 754, 119 S. Ct. at 2266, 144 L. Ed. 2d at 678. Indeed, in *Lee I*, defendants acknowledged Eleventh Amendment sovereign immunity "applies equally in state court and federal court." 815 N.W.2d at 738. The corollary to this principle is that exceptions to Eleventh Amendment immunity apply in both federal and state court. As Justice Souter noted in *Coeur d'Alene Tribe*, "it appears that in all 50 States . . . , private plaintiffs may obtain declaratory and injunctive relief in state court for the acts of state officials in circumstances where relief would be available in federal court under *Young*." 521 U.S. at 317 n.15, 117 S. Ct. at 2058 n.15, 138 L. Ed. 2d at 479 n.15 (Souter, J., dissenting) (collecting cases); *accord Collins v. State Bd. of Soc. Welfare*, 248 Iowa 369, 373, 81 N.W.2d 4, 6 (1957) (recognizing that when "no judgment or decree is asked against the State, but the suit is rather to require its officers and agents to perform their duty, there is no immunity recognized" and ordering injunctive relief for a violation of the Iowa Constitution); *Pierce v. Green*, 229 Iowa 22, 32, 294 N.W. 237, 245 (1940) (commenting "[i]f the State

has any interest in this case it is that its officers perform their duties" and ordering the state to conduct tax assessments as required by law).

Further, state courts can order *Ex parte Young* relief not only for violations of the Federal Constitution, but also for violations of federal statutes:

> Neither in theory nor in practice has it been shown problematic to have federal claims resolved in state courts where Eleventh Amendment immunity would be applicable in federal court but for an exception based on *Young.* For purposes of the Supremacy Clause, it is simply irrelevant whether the claim is brought in state or federal court. . . .
>
> . . . A doctrine based on the inherent inadequacy of state forums would run counter to basic principles of federalism. . . .
>
> Interpretation of federal law is the proprietary concern of state, as well as federal, courts. . . . It would be error coupled with irony were we to bypass the Eleventh Amendment, which enacts a scheme solicitous of the States, on the sole rationale that state courts are inadequate to enforce and interpret federal rights in every case.

*Coeur d'Alene Tribe,* 521 U.S. at 274–76, 117 S. Ct. at 2037, 138 L. Ed. 2d at 451–52 (citations omitted);[4] *see also Lee I,* 815 N.W.2d at 743 (ordering remand to determine prospective injunctive relief available

---

[4]This quotation comes from part II-C of the principal opinion written by Justice Kennedy and joined by Chief Justice Rehnquist. *See Coeur d'Alene Tribe*, 521 U.S. at 274–76, 117 S. Ct. at 2037, 138 L. Ed. 2d at 451–52. The three-justice concurrence took issue with parts II-B and II-C of the principal opinion, which suggested the inadequacy of a state forum is a prerequisite to federal jurisdiction in *Ex parte Young* cases. *See id.* at 294, 117 S. Ct. at 2046, 138 L. Ed. 2d at 463 (O'Connor, J., concurring in part and concurring in the judgment). The concurrence stated, "There is no need to call into question the importance of having federal courts interpret federal rights—particularly as a means of serving a federal interest in uniformity—to decide this case." *Id.* The concurrence did not disagree, however, with the principle reflected in the passage we quote above, stating, "Nor does acknowledging the interpretive function of federal courts suggest that state courts are inadequate to apply federal law." *Id.* The four dissenters agreed: "Federal-question jurisdiction turns on subject matter, not the need to do some job a state court may wish to avoid; it addresses not the adequacy of a state judicial system, but the responsibility of federal courts to vindicate what is supposed to be controlling federal law." *Id.* at 313, 117 S. Ct. at 2055, 138 L. Ed. 2d at 476 (Souter, J., dissenting).

under *Ex parte Young* for violation of FMLA). Thus, our court has ordered a state official to address violations of federal law, notwithstanding sovereign immunity. *See McKeown v. Brown*, 167 Iowa 489, 497–99, 149 N.W. 593, 595–97 (1914) (ordering state treasurer to return wrongfully escheated inheritance to rightful heir, taxed at rate imposed by federal treaty).

**B. Whether Lee Named a Proper Party as a Defendant for Relief Under *Ex parte Young*.** Defendants next argue Lee is not entitled to *Ex parte Young* relief because she did not name a state official as a defendant, "let alone an official being sued in that official's 'official' capacity." This omission is not fatal. Lee's petition named "Defendants State of Iowa and Polk County Clerk of Court." "The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading." *Coeur d'Alene Tribe*, 521 U.S. at 270, 117 S. Ct. at 2034, 138 L. Ed. 2d at 448. We hold the "Polk County Clerk of Court" is a state official and Lee was not required to plead the given name of the individual[5] holding that position.

Two principles support our conclusion. First, the " 'course of proceedings' " will typically "indicate the nature of the liability sought to be imposed." *Graham*, 473 U.S. at 167 n.14, 105 S. Ct. at 3106 n.14, 87 L. Ed. 2d at 122 n.14 (quoting *Brandon v. Holt*, 469 U.S. 464, 469, 105 S. Ct. 873, 876, 83 L. Ed. 2d 878, 884 (1985) (recognizing "[i]n many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both")). Here, Lee sued the Polk

---

[5]As a practical matter, naming a state official by job title alone, without including the official's given name, avoids the need to amend the petition when a new person is hired into that role. Lois Leary was the Polk County Clerk of Court in 2004, but Randy Osborn now holds that position.

County Clerk of Court without seeking to impose personal liability on Lois Leary, her supervisor. Our remand order assumed a proper party was named for injunctive relief.

Second, "[i]f a plaintiff's complaint is silent about the capacity in which she is suing the defendant, we interpret the complaint as including only official-capacity claims." *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *accord Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007). This commonsense approach reinforces our determination that Lee's petition sued the Polk County Clerk of Court in her official capacity. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 377 (Tex. 2009) (concluding plaintiff sued defendants in their official capacities based on " 'the nature of the liability sought to be imposed' " and "construing [the] pleadings liberally" (citation omitted)).

Defendants rely on decisions by the Second Circuit and Ninth Circuit, holding *Ex parte Young* does not apply when a plaintiff fails to name a state official as a defendant: *Santiago v. New York State Department of Correctional Services*, 945 F.2d 25, 31–32 (2d Cir. 1991), and *Douglas v. California Department of Youth Authority*, 271 F.3d 812, 821 n.6 (9th Cir.), *amended by* 271 F.3d 910 (2001). Both cases are distinguishable. In *Douglas*, the plaintiff sued only an agency, the California Department of Youth Authority. 271 F.3d at 815. In *Santiago*, the plaintiff sued an agency, the New York State Department of Correctional Services, and a private psychiatrist. 945 F.2d at 27. By contrast, Lee named as a defendant the Polk County Clerk of Court, an individual who is a state official. We hold Lee sued a proper party for *Ex parte Young* injunctive relief.

**C. Whether Lee's Prayer for Relief Was Adequate for *Ex parte Young* Injunctive Relief.** Defendants in turn argue the court cannot

reinstate Lee because her pleadings did not request "*Ex parte Young* relief" or "prospective injunctive relief," and she "even failed to request any relief in the form of reinstatement." They assert that Lee asked for relief only under the FMLA and that our holding in *Lee I*, finding sovereign immunity protects the State from self-care FMLA suits, renders her FMLA prayer for relief unenforceable. Relatedly, defendants argue the district court awarded Lee "equitable remedies" available under the FMLA, which they believe are distinct from *Ex parte Young* injunctive relief.

We disagree that these perceived deficiencies in Lee's pleadings preclude her from reinstatement and related relief under *Ex parte Young*. Lee's petition requested "such other relief as may be just in the circumstances." Lee contends that under our liberal pleading rules, she adequately put defendants on notice that she sought prospective injunctive relief that includes reinstatement. In any event, we conclude the reinstatement claim was litigated by consent in district court in 2007, obviating any need to amend Lee's pleadings to specifically request such relief. Finally, we conclude it was unnecessary for Lee or the district court to explicitly plead her reinstatement claim as "*Ex parte Young* injunctive relief."

Under Iowa's notice pleading rules, a prayer for general equitable relief " 'is to be construed liberally, and will often justify granting relief in addition to that contained in the specific prayer, provided it fairly conforms to the case made by the petition and the evidence.' " *Moser v. Thorp Sales Corp.*, 312 N.W.2d 881, 895 (Iowa 1981) (quoting *Holi-Rest, Inc. v. Treloar*, 217 N.W.2d 517, 526 (Iowa 1974)); *see also Anderson v. Yearous*, 249 N.W.2d 855, 858–59 (Iowa 1977) ("The relief granted under the general prayer must be consistent with the case made by the

pleadings and must be such as will not surprise the defendant." (Internal quotation marks omitted.)). We generally expect plaintiffs to identify "the true nature of the action" and narrow the issues "at the pretrial conference or during the trial before instruction." *Tigges v. City of Ames*, 356 N.W.2d 503, 507 (Iowa 1984) (citation omitted). Further, parties may consent to try issues beyond the scope of the pleadings. Iowa R. Civ. P. 1.457 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."); *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 229 (Iowa 1998) (rejecting argument that affirmative defense was not specifically pled and holding the issue was tried by consent when it "was presented before the jury and there was abundant evidence to support a jury finding favoring [the defense]").

Defendants were well aware during the 2007 proceedings that Lee sought reinstatement as a judicial remedy. Reinstatement is a form of prospective injunctive relief. *See Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 324 (5th Cir. 2008) (holding "a request for reinstatement is sufficient to bring a case within the *Ex parte Young* exception to Eleventh Amendment immunity" because "it is a claim for prospective relief designed to end a continuing violation of federal law"); *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 96 (2d Cir. 2007) ("Every Circuit to have considered the issue . . . has held that claims for reinstatement to previous employment satisfy the *Ex parte Young* exception to the Eleventh Amendment's sovereign immunity bar."); *Treleven v. Univ. of Minn.*, 73 F.3d 816, 819 (8th Cir. 1996) (allowing claim for reinstatement under *Ex parte Young*). At trial, Lee requested reinstatement to her position in the Polk County Clerk of Court Office.

Defendants cross-examined her on this issue. During trial, the district court noted the parties agreed "that if there's a finding for the Plaintiff this Court has the subject matter jurisdiction to reinstate Plaintiff." Lee's posttrial motion requested reinstatement. Though defendants argued reinstatement was inappropriate in both their brief resisting reinstatement and at the hearing, their brief acknowledged "courts should reinstate employees who have suffered unlawful employment discrimination" and conceded "[w]ithout question, the district court can order the State of Iowa to reinstate Lee." The district court's January 25, 2007 ruling on defendants' motion to stay recounted "[d]uring trial, the parties stipulated that the issues of reinstatement and front pay would be reserved for the Court." Defendants were not surprised by Lee's request for injunctive relief of reinstatement and had ample opportunity to oppose such relief.

In response to defendants' argument that equitable relief under the FMLA is distinct from injunctive relief under *Ex parte Young*, we conclude the label is not controlling. Lee's theory of liability remained the same on remand: she is entitled to reinstatement because defendants violated the FMLA. *Ex parte Young* injunctive relief is a method of enforcing valid federal legislation, in this case the self-care provision of the FMLA. As such, it is appropriate to conceptualize Lee's reinstatement both as relief under the FMLA and as *Ex parte Young* relief. Defendants cite no authority to the contrary.

**D. Whether an Award of Earnings from the Date of the Original Reinstatement Order to Her Actual Reinstatement Constitutes Prospective Injunctive Relief.** Finally, we address defendants' argument that the award of wages and benefits from October 2007 constitutes impermissible retroactive relief. The *Ex parte Young*

doctrine allows only prospective injunctive relief. *Edelman*, 415 U.S. at 664, 94 S. Ct. at 1356, 39 L. Ed. 2d at 673. "[T]he Supreme Court has established a bright line Eleventh Amendment test between permissible prospective and impermissible retroactive relief, with the effective date of the District Court's order requiring future compliance being the operative date." *Barnes*, 828 F.2d at 1257. Thus, monetary awards through injunctive relief are permissible under the Eleventh Amendment so long as they fall on the prospective side of this timeline. *See Milliken v. Bradley*, 433 U.S. 267, 290, 97 S. Ct. 2749, 2762, 53 L. Ed. 2d 745, 761–62 (1977) ("That the programs are also 'compensatory' in nature does not change the fact that they are part of a plan that operates prospectively . . . . We therefore hold that such prospective relief is not barred by the Eleventh Amendment."); *Vargas v. Trainor*, 508 F.2d 485, 491 (7th Cir. 1974) ("[T]he entry of a court order or judgment requiring that payments be made divides the past from the prospective for Eleventh Amendment purposes."); *Libby v. Marshall*, 653 F. Supp. 359, 361–62 (D. Mass. 1986) ("Later cases have made it even more clear that the relevant distinction for Eleventh Amendment purposes is that between a *damage* award and an *injunction*, not between one that would cost the state money and one that would not."). The parties disagree on the date from which prospective relief should be measured.

Defendants argue our decision in *Lee I* reversed the district court's October 29, 2007 order in its entirety, making the district court's October 18, 2012 order of reinstatement the point from which we should award prospective relief of her weekly wages and benefits. They therefore assert the district court's 2012 order for lost wages and benefits from 2007 impermissibly awarded Lee retroactive monetary awards. Lee disagrees, arguing prospective relief should be measured from the 2007

reinstatement order. Lee also argues defendants waived any objection to paying her lost wages and benefits post-2007 by asking for a stay of her reinstatement and assuring the court she would be made whole if she prevailed. Defendants respond that they agreed to pay Lee's post-2007 lost wages only if we *affirmed* in *Lee I,* and they assert our opinion was instead a reversal. We conclude Lee is correct on both accounts: October 29, 2007, is the date from which prospective relief is properly determined and defendants waived their objection to paying lost wages from this date by attaining a stay of Lee's reinstatement. Any other result would "permit States to achieve unfair tactical advantages." *See Lapides v. Bd. of Regents of Univ. Sys.,* 535 U.S. 613, 621, 624, 122 S. Ct. 1640, 1645–46, 152 L. Ed. 2d 806, 814, 816 (2002) (holding state's removal of suit to federal court waived its Eleventh Amendment immunity).

Defendants' arguments rest on a flawed premise—that we did not uphold the reinstatement remedy in *Lee I.* Defendants are technically correct that *Lee I* did not "affirm" the district court's 2007 judgment. Our decision stated that it reversed the judgment of the district court and remanded the case for further proceedings, ordering the district court to "enter a new final judgment." *Lee I*, 815 N.W.2d at 743. But, we agree with the district court's interpretation of our remand: "None of the trial court's holdings regarding equitable relief were specifically overruled, and as law of the case, they must still be enforced." We specifically held only the "noninjunctive relief granted in the judgment cannot stand." *Id.* We limited the district court's task on remand to "determin[ing] what relief *granted in its judgment* is *still available* to Lee within the framework of this lawsuit, findings of the jury at trial, and the cloak of immunity protecting the State." *Id.* (emphasis added). The

district court was therefore responsible only for categorizing the elements of the 2007 order as injunctive or noninjunctive. In "the framework of this lawsuit," the district court's 2012 ruling correctly concluded the 2007 reinstatement order is relief granted in that judgment that is still available to Lee.

Accordingly, October 29, 2007, the date of the original reinstatement order, is the effective date on which defendants were required to reinstate Lee to her former position. An award of Lee's lost earnings from that date forward is properly classified as prospective relief. *See Buckhanon v. Percy*, 708 F.2d 1209, 1216 (7th Cir. 1983) (authorizing payments onward from "the date upon which the State of Wisconsin came under a court-imposed obligation to provide more adequate notice before reducing or terminating benefits"). The 2012 order did not "impose upon the State 'a monetary loss resulting from a past breach of a legal duty.'" *Verizon*, 535 U.S. at 646, 122 S. Ct. at 1760, 152 L. Ed. 2d at 882 (emphasis omitted) (quoting *Edelman*, 415 U.S. at 668, 94 S. Ct. at 1358, 39 L. Ed. 2d at 676). Rather, the 2007 order imposed *prospective injunctive relief* from defendants' violation of the FMLA, creating an obligation to reinstate Lee. The 2012 order then required payment of state funds as a necessary consequence of defendants' stay of the 2007 order. *Compare Milliken*, 433 U.S. at 289–90, 97 S. Ct. at 2762, 53 L. Ed. 2d at 761–62 (upholding desegregation plan that required state to bear half the cost of implementing comprehensive educational programs), *with Edelman*, 415 U.S. at 668, 94 S. Ct. at 1358, 39 L. Ed. 2d at 675–76 (overturning district court decree that "require[d] payment of state funds, not as a necessary consequence of compliance in the future . . . , but as a form of compensation to those whose applications were processed on the slower

time schedule *at a time when petitioner was under no court-imposed obligation to conform to a different standard*" (emphasis added)).

The Eighth Circuit adjudicated a similar issue in a case with comparable facts. In *Barnes*, the St. Louis City Circuit Court Clerk's Office terminated Shirley Barnes on January 3, 1983, in violation of her First Amendment rights. 828 F.2d at 1255. On July 27, the district court ordered Barnes reinstated and awarded her backpay from January 3. *Id.* Defendants appealed and were granted a stay of judgment pending the appeal. *Id.* The Eighth Circuit affirmed as to Barnes, but reversed as to another plaintiff. *Id.* On remand, the district court modified its prior judgment as it applied to the other plaintiff, but "[t]he prior judgment remained unchanged insofar as it applied to Barnes." *Id.* In further proceedings, defendants raised a sovereign immunity challenge to the backpay award for the time between her termination and the reinstatement order and for the time the stay was in effect. *Id.* The district court ruled that both components of backpay constituted retrospective monetary relief prohibited by the Eleventh Amendment, but held that defendants had waived sovereign immunity for the post-July backpay by seeking a stay. *Id.* at 1255–56. Therefore, the district court awarded Barnes backpay from July 1983 through the date of her reinstatement. *Id.* at 1256. Defendants appealed this ruling. *Id.* at 1256–57.

The Eighth Circuit "reject[ed] defendants' argument that the Eleventh Amendment precludes an award of backpay for the period during which the stay was in effect." *Id.* at 1257. The court stated:

> In our view, the stay merely prevented immediate execution on and enforcement of the judgment. . . . Thus, insofar as the Eleventh Amendment is concerned, July 27, 1983, the date of the District Court's original order finding a

constitutional violation and granting Barnes her remedies, is the operative date after which prospective relief (*i.e.*, liability for the payment of Barnes's salary) is permissible. We hold that the Eleventh Amendment does not bar an award of pay to Barnes for the period during which the stay pending appeal was in effect.

*Id.* at 1257–58 (footnotes omitted). The court aptly commented, "in the circumstances of this case the term 'backpay' is somewhat of a misnomer." *Id.* at 1257 n.5. Because the court agreed with Barnes that backpay from the date of the judgment was prospective, it did not reach her alternative argument that the defendants had waived sovereign immunity by seeking the stay. *Id.* at 1257–58 & n.6.[6]

We agree not only with the Eighth Circuit's conclusion regarding backpay awards during a stay, but also with the *Barnes* district court's conclusion that the state waived its sovereign immunity by requesting a stay. The *Barnes* district court recounted the assurances given by the defendants to persuade the court to issue a stay of reinstatement:

> "Plaintiffs, . . . incorrectly and with exaggeration seek to describe the harm that would result to them if the stay of judgment is granted. . . . With respect to plaintiffs' income and benefits, . . . their alleged injury can be calculated and compensated by money damages if they were successful on a case on the merits. It is obvious that the amount which may be due plaintiffs for loss of income and benefits can be calculated and paid."

*Barnes v. Bosley*, 625 F. Supp. 81, 86 (E.D. Mo. 1985). The district court concluded:

> By this representation, the defendants waived the eleventh amendment protection they had as to Barnes because of the stay. The result is that defendants are liable

---

[6]The Eighth Circuit further concluded the district court miscalculated Barnes's backpay by refusing to offset the award by the amount Barnes had earned at another job while awaiting her reinstatement. *Id.* at 1258–59. The Eighth Circuit remanded the case with instructions to calculate Barnes's interim earnings and to reduce her backpay award by that amount. *Id.* at 1259.

> to Barnes for reinstatement and benefits from the date of this Court's original order, July 27, 1983.

*Id.*

Defendants made equivalent assurances here to obtain a stay of reinstatement—"[i]f the Supreme Court affirms the district court, . . . the State of Iowa will pay . . . any amounts owed to the plaintiff during the time she should have been reinstated and when she is reinstated." We hold those representations waived the State's sovereign immunity. "A representation made in a judicial proceeding for the purpose of inducing the court to act or refrain from acting satisfies the [waiver] requirements stated in *Edelman.*" *Vargas*, 508 F.2d at 492; *see also Vennerberg Farms, Inc. v. IGF Ins. Co.*, 405 N.W.2d 810, 814 (Iowa 1987) (recognizing the "commonsense" doctrine of "judicial estoppel or 'preclusion by inconsistent positions' . . . prohibits a party who has successfully and unequivocally asserted a position in one proceeding from asserting an inconsistent position in a subsequent proceeding" (citation omitted)). In granting the stay, we relied upon defendants' representation that Lee would "not suffer any irreparable harm or injury" and would "be made whole." Defendants cannot now use the Eleventh Amendment to avoid honoring their promise. *See Toll v. Moreno* (*Toll II*), 458 U.S. 1, 17–18, 102 S. Ct. 2977, 2986, 73 L. Ed. 2d 563, 576–77 (1982) (holding state university waived its sovereign immunity by seeking a stay and representing to the district court that it would make refund payments if the case was affirmed on appeal);[7] *Vargas*, 508 F.2d at 492 (holding

---

[7]The 1982 decision in *Toll II* was the second time the case had reached the United States Supreme Court. 458 U.S. at 8, 102 S. Ct. at 2981, 73 L. Ed. 2d at 570. In a 1979 per curiam opinion, the Supreme Court vacated the judgment of the Fourth Circuit and remanded the case to the district court for reconsideration. *Toll v. Moreno* (*Toll I*), 441 U.S. 458, 462, 99 S. Ct. 2044, 2046, 60 L. Ed. 2d 354, 354–55 (1979). In the 1982 decision, *Toll II*, defendants argued the per curiam opinion, *Toll I*, had vacated

defendant waived sovereign immunity by representing he would make deficiency payments if the plaintiffs were ultimately successful in order to persuade the court not to enter an injunction against him).

We therefore hold the district court correctly awarded Lee her lost earnings from October 29, 2007, as prospective relief under *Ex parte Young.*

### IV. Disposition.

For the foregoing reasons, we hold Lee is entitled to prospective injunctive relief under *Ex parte Young*, including an award of her weekly wages and benefits from the date the district court ordered her reinstatement on October 29, 2007. We therefore affirm the district court's order of October 18, 2012.

**AFFIRMED.**

All justices concur except Cady, C.J., and Wiggins, J., who dissent.

---

the district court's original order. *Toll II*, 458 U.S. at 17–18, 102 S. Ct. at 2986, 73 L. Ed. 2d at 576–77. The Supreme Court rejected this argument, holding *Toll I* had "left the judgment of the District Court undisturbed." *Id.* at 18, 102 S. Ct. at 2986, 73 L. Ed. 2d at 577. The Supreme Court further stated, "contrary to petitioners' suggestion, a vacatur of the District Court's judgment was not necessary to give the District Court jurisdiction to reconsider the case." *Id.* at 18, 102 S. Ct. at 2986–87, 73 L. Ed. 2d at 577. Defendants in this case rely on this language in *Toll II* to argue *Lee I* reversed the district court's ruling. As discussed above, we disagree and do not find *Toll II* supports defendants' position. To the contrary, we agree with the *Toll II* Court's footnote commenting:

> Even if we were to assume that the judgment of the District Court was indeed vacated, we could not say that the terms of the University's waiver of sovereign immunity—that the District Court's order be "finally affirmed on appeal"—would not be satisfied. Petitioners have not prevailed on the merits in a single court, despite the numerous decisions that this litigation has prompted. By its original order, the District Court held that the University's in-state policy was invalid insofar as it discriminated against G–4 aliens. Today, we reaffirm that conclusion.

*Id.* at 19, 102 S. Ct. at 2987, 73 L. Ed. 2d at 577 n.27.

**CADY, Chief Justice (dissenting).**

I respectfully dissent. The proposition to support the judgment entered against the State, despite its cloak of immunity granted by the Eleventh Amendment to the United States Constitution, was not raised by the plaintiff until *after* the appeal. It is a fundamental principle in our civil system of justice that claims and defenses cannot be raised by a party for the first time on, or after, appeal and used to justify and support the final judgment. This principle has been ignored in this case, and our justice system has failed to deliver on one of its most basic promises—procedural fairness.

Lee brought this lawsuit under the Federal Family and Medical Leave Act (FMLA). She identified the State of Iowa and the Polk County Clerk of Court as defendants. She claimed her rights as a state employee under the FMLA self-care provision were denied by the State, and she was subjected to wrongful and retaliatory termination for exercising her FMLA rights. The State admitted in its answer to the petition that the Polk County Clerk of Court was an office within the judicial branch of government and was a part of the State of Iowa. Lee admitted the same, and the case proceeded against the State with the parties treating the Clerk of Court as the State.

The State raised an affirmative defense in its answer. It claimed it was immune from the lawsuit under the Eleventh Amendment to the United States Constitution. It subsequently moved for summary judgment based on the single contention that the State and all of its components were immune from the lawsuit. Lee resisted the claim of immunity by asserting two arguments. First, Lee averred the State had no immunity against FMLA lawsuits because Congress abrogated the

State's immunity when it enacted the FMLA. Second, Lee argued that even if Congress did not abrogate its immunity, the State waived immunity by adopting the FMLA provisions as employee policies of the judicial branch.[8] Within the framework of these arguments, the parties vigorously litigated the issue of whether the lawsuit was required to be dismissed because the State was immune.

The district court agreed with the arguments asserted by Lee and denied summary judgment. The case proceeded to trial. At trial, Lee made claims for lost wages and benefits, reinstatement of employment, front pay, and other relief under the FMLA. She argued the jury should decide all such issues. The district court, however, only submitted the issues of lost wages and benefits to the jury, along with liability, and informed the jury it would separately consider the issues of reinstatement and front pay.

The jury returned a verdict for Lee in the amount of the stipulated past wages of $165,122. It found the State violated the FMLA. Lee then asked the court for reinstatement and front pay, as permitted under the FMLA. The district court ordered reinstatement and entered judgment for weekly front pay until Lee actually returned to her job. As a part of the posttrial proceedings, the State moved for a judgment notwithstanding the verdict based on its claim of immunity. In response, Lee again argued that Congress abrogated states immunity in enacting the FMLA, and alternatively, immunity was waived by the State through its actions in implementing provisions of the FMLA. No new arguments

---

[8]More specifically, Lee claimed the State waived its immunity by placing the FMLA provisions in its handbook and on workplace posters. She also asserted the State waived its immunity by failing to tell its employees that it was retaining its immunity. Finally, Lee claimed the State waived its immunity by implementing the FMLA provisions.

were made. The district court denied the motion, and the State appealed. The judgment was stayed during the appeal on the condition the State would pay the running weekly front pay in the event the reinstatement was upheld.

On appeal, the State claimed the district court erred in failing to recognize its immunity. Lee again claimed this immunity was abrogated by Congress when it enacted the FMLA and, alternatively, argued the State waived immunity by incorporating the FMLA into its employment policies. Again, no new arguments or claims were made.

Ultimately, we recognized the Supreme Court's holding that Congress did not abrogate the State's immunity in enacting the FMLA self-care provision, and the State did not otherwise waive its immunity by incorporating FMLA provisions into its employment policies. *Lee v. State* (*Lee I*), 815 N.W.2d 731, 740, 743 (Iowa 2012); *see also Coleman v. Ct. of Appeals of Md.*, 566 U.S. ___, ___, 132 S. Ct. 1327, 1338, 182 L. Ed. 2d 296, 306–07 (2012) (plurality opinion). In other words, the State was successful in its appeal on all issues. If litigation is about winning and losing, the State won. They won on all claims. We remanded the case to the district court to determine "what relief granted in its judgment is still available to Lee within the framework of this lawsuit." *Lee I*, 815 N.W.2d at 743.

On remand, the district court found the reinstatement order and front pay judgment were not covered by the state's immunity. It made this determination by declaring the lawsuit by Lee was, from the beginning, actually one against a public official of the State to enforce rights under federal law, and this type of claim fell outside the cloak of immunity granted to the State. *See Ex parte Young*, 209 U.S. 123, 155–56, 28 S. Ct. 441, 452, 52 L. Ed. 714, 727 (1908). In other words, the

State lost. The *Ex parte Young* doctrine was recognized by the district court to create an exception to the State's immunity under the Eleventh Amendment in Iowa in actions brought in state court.

This second appeal from the decision by the district court now recognizes and adopts the *Ex parte Young* doctrine as an exception to the immunity granted to states under the Eleventh Amendment that otherwise protects states from claims in state court to enforce federal law. I agree with this substantive legal principle. The benefits and protections of federal law should apply to employees of the State of Iowa in the same way they apply to private employees in Iowa. Moreover, employees of the state must be able to sue public officials to enforce federal law when they fail to do so. Finally, when a public officer fails to follow federal law in her official capacity, the state's immunity should not apply. This is all sound law. In fact, we *sua sponte* raised the *Ex parte Young* doctrine in *Lee I* to illustrate how state workers can enforce FMLA self-care provision rights despite the state's immunity from damage claims. *See Lee I*, 815 N.W.2d at 743.

Notwithstanding, our legal system does not just revolve around substantive principles of law. There is an equally important procedural law that guides the legal process itself.

Lee did, in fact, sue the Polk County Clerk of Court. The *Ex parte Young* doctrine does, in fact, recognize that a lawsuit for prospective injunctive relief against a public official acting in his or her official capacity is an exception to the state's immunity. *Edelman v. Jordan*, 415 U.S. 651, 676–77, 94 S. Ct. 1347, 1362, 39 L. Ed. 2d 662, 680 (1974). These are the two propositions to support the holding in this appeal that Lee's lawsuit was, therefore, not subject to the State's immunity. *See Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645, 122 S. Ct.

1753, 1760, 152 L. Ed. 2d 871, 882 (2002) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 117 S. Ct. 2028, 2047, 138 L. Ed. 2d 438, 465 (1997) (O'Connor, J., concurring in part and concurring in judgment))).  As a theory of logic, this conclusion follows perfectly from its two propositions.  However, the legal process is not simply a product of theoretical syllogisms.  It requires a process that is fair.  This procedural fairness lies at the core of the entire American legal system and helps explain its strength and success.

In this case, procedural fairness has been ignored.  The party who won its lengthy and hard-fought appeal—the State—has now lost.  The State has not only lost, but it can now see for the first time it never had any chance of winning from the beginning, unless its lawyers would have done what has never been required of lawyers in the past.  The only way the State could have succeeded on its claim of immunity in this case was to affirmatively make the argument for Lee when it moved for summary judgment that the petition she filed implicated the *Ex parte Young* doctrine and that this doctrine should be recognized as an exception to states' immunity, but not in this case.

In its best light, this case now holds that a defendant who raises a legal defense to a lawsuit must not only establish the proposition defining the defense, it must affirmatively disprove all possible exceptions to the defense, including those never urged or even recognized by the plaintiff, even those never before recognized in the prior cases of this court.  Conversely, the holding means the plaintiff does not need to

identify the reasons a defense asserted by the defendant is invalid until a court rules the defense has been proven and all appellate review has been exhausted.

This holding is contrary to our system of advocacy and requires a litigant to be an advocate against itself. In turn, it now requires a lawyer to flesh out the arguments for the opposing party and make a case against his or her own client. Few other holdings could be as fundamentally antithetical to the foundational principles of practice.

The State clearly had the duty to establish its defense of immunity. However, that duty should not require the State to disprove any particular exception to the immunity, at least not until the particular exception was placed into issue by Lee. Under our law, when the State raises the defense of immunity under the Eleventh Amendment, an employee asserting the wrongful-termination claim must demonstrate an exception to the immunity. *See Nelson v. Univ. of Texas*, 535 F.3d 318, 321 (5th Cir. 2008) (indicating a wrongful-termination lawsuit against a public officer acting in his official capacity was required to be dismissed unless the plaintiff could "demonstrate an exception" to the state's immunity).

The immunity doctrine granted to the states under our United States Constitution is applicable to the FMLA self-care provision. *Coleman*, 566 U.S. at ___, 132 S. Ct. at 1338, 182 L. Ed. 2d at 306–07. The doctrine means the State of Iowa is, in fact, immune from FMLA self-care provision claims, *Lee I*, 815 N.W.2d at 743, and this immunity extends to actions by state officers acting in their official capacities, *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) ("[T]he principle of state-sovereign immunity generally precludes actions against state officers in their official capacities . . . ." (citing *Edelman*,

415 U.S. at 663–69, 94 S. Ct. at 1355–58, 39 L. Ed. 2d at 672–76)). The state's immunity, however, is not absolute, but is subject to several exceptions. *Alden v. Maine*, 527 U.S. 706, 755–57, 119 S. Ct. 2240, 2266–67, 144 L. Ed. 2d 636, 678–80 (1999). The *Ex parte Young* doctrine is one exception that has been recognized in the federal courts for over a century, and it applies to lawsuits against state officials for prospective injunctive or declaratory relief that is designed to remedy an ongoing violation of federal law. *See Ex parte Young*, 209 U.S. at 157, 28 S. Ct. at 453, 52 L. Ed. at 728. The rationale for this exception is that a state officer who violates federal law is stripped of his official character and loses the cloak of state immunity. *Coeur d'Alene Tribe*, 521 U.S. at 288, 117 S. Ct. at 2043, 138 L. Ed. 2d at 460 (O'Connor, J., concurring in part and concurring in judgment); *see Ex parte Young*, 209 U.S. at 159–60, 28 S. Ct. at 454, 52 L. Ed. at 729.

In this case, of course, Lee did not raise or argue the *Ex parte Young* exception. Instead, she argued two other exceptions. This is an undeniable fact. It is a basic rule of appellate law that arguments not raised in the trial court "cannot be raised for the first time on appeal." *Airport Comm'n v. Schade*, 257 N.W.2d 500, 503 (Iowa 1977); *see also Minor v. State*, 819 N.W.2d 383, 406 (Iowa 2012) (declining to consider an argument made for the first time on appeal); *Elkader Prod. Credit Ass'n v. Eulberg*, 251 N.W.2d 234, 237 (Iowa 1977) (holding an appellant cannot assert a defense under one statute at trial and use a different statute to support the defense on appeal). This rule has existed almost from the beginning of our court system. *See Davis v. Nolan*, 49 Iowa 683, 686–87 (1878). We emphasized our strong commitment to this rule in *DeVoss v. State*, 648 N.W.2d 56, 60–63 (Iowa 2002). We also emphasized that the rule exists to promote fundamental fairness and prevent "ambush" on

appeal. *Id.* at 63; *see also State v. Tobin*, 333 N.W.2d 842, 844 (Iowa 1983) ("[T]he requirement of error preservation gives opposing counsel notice and an opportunity to be heard on the issue and a chance to take proper corrective measures or pursue alternatives in the event of an adverse ruling.").

The result of this case could not be more unfair to the State. If the State knew the court would change course in this case and consider Lee's claim to be one under the *Ex parte Young* doctrine after the appeal was completed, it would have never implicitly assumed liability for the running front pay. It would have been illogical for the State to imply such a promise because it would have been required to make good on its promise even if it won the appeal. It is unfair to now tag the State with a judgment it never knew existed. We have been inconsistent in the past in the application of our preservation-of-error doctrine, but never when it has blindsided one of the parties by imposing such unfair consequences.

As with all parties to litigation, the State had a right to expect that it did not need to articulate a winning argument for the plaintiff. It also had a right to expect that our fundamental rules of advocacy requiring parties to make their own arguments would be followed. It also had a right to expect our most basic rules of appellate practice that foreclose new arguments on appeal would be followed.

Finally, even if Lee should now be permitted to redefine her lawsuit following the appeal, the judgment entered against the State is required to be reversed because it is tainted by legal error. If Lee's lawsuit was, in fact, one against a public official acting in her official capacity under the doctrine of *Ex parte Young*, then it should have only proceeded under a process consistent with that claim. It clearly did not. The process provided under *Ex parte Young* only entitled Lee to proceed against the

individual public official, and the prospective claim should only be tried to the court. *Cf. Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. (3 Pet.) 433, 447, 7 L. Ed. 732, 737 (1830) (noting the Seventh Amendment to the United States Constitution only guarantees a right to a jury trial in "suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered").

Instead, this claim proceeded within our jury process with the State as the target defendant (the clerk of court was never even identified by name) and liability (violation of the FMLA) was determined by the jury within a body of evidence introduced at trial to support monetary relief against the State. This entire process was erroneous and extremely prejudicial to the State because the State had a right to be dismissed from the lawsuit from the beginning.[9] The jury should not have

---

[9]Importantly, an *Ex parte Young* lawsuit proceeds only against an individual public official. *See Kentucky v. Graham*, 473 U.S. 159, 166–67 & n.14, 105 S. Ct. 3099, 3105–06 & n.14, 87 L. Ed. 2d 114, 122 & n.14 (1985) (noting that "official-capacity actions are not treated as actions against the State"). To be sure, an official-capacity action "is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45, 58 (1989). However, in what is only truly a "fiction," *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 114 n.25, 104 S. Ct. 900, 915 n.25, 79 L. Ed. 2d 67, 87 n.25 (1984), the State loses its cloak of immunity only if the individual public official is found to be violating federal law while in his or her official capacity, *see Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. ___, ___, 131 S. Ct. 1632, 1638, 179 L. Ed. 2d 675, 686 (2011) ("[W]hen a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes."); *see also Graham*, 473 U.S. at 167, 105 S. Ct. at 3106, 87 L. Ed. 2d at 122–23 (noting that the public official does not have recourse to "personal immunity defenses" like absolute or qualified immunity, and that "[t]he only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua entity*, may possess, such as the Eleventh Amendment"). Nevertheless, in such an action, only reinstatement or other prospective relief can be granted. *See Nelson*, 535 F.3d at 323; *see also Edelman*, 415 U.S. at 677, 94 S. Ct. at 1362, 39 L. Ed. 2d at 680. Accordingly, leaving the State as a named party to the suit—and leaving before the jury the State's " 'virtually unlimited ability . . . to pay the verdict,' " *cf. Steinhardt v. Potter*, 326 F. Supp. 2d 449, 451 (S.D.N.Y. 2004) (quoting *Lehman v. Nakshian*, 453 U.S. 156, 161 n.8, 101 S. Ct. 2698, 2702 n.8, 69 L. Ed. 2d 548, 554 n.8 (1981))—prejudiced the State.

considered liability against the State, and the entire claim should be considered without a jury.  *Cf. Parsons*, 28 U.S. at 447, 7 L. Ed. at 737.  This error was prejudicial to the State, and this prejudice now prevents the original judgment from being substituted on remand to support the judgment under *Ex parte Young.*

Justice can only be achieved if the process is fair.  The process was not fair in this case, and injustice has resulted.

Wiggins, J., joins this dissent.